## STATE v. ALBERT ANDERSON.[1]

### May 2, 1924.

### No. 23,854.

**Indictment for grand larceny sufficient.**

1.   Indictment examined and *held* (1) that it states a public offense, and (2) that it substantially conforms to the requirements of sections 9134 and 9136, G. S. 1913, as qualified by section 9142, G. S. 1913.

**Essential elements of crime when committed by use of false statements.**

2.   Essential elements necessary to constitute the crime of grand larceny committed by the use of false statements are stated.

**Definition of encumbrance.**

3.   An encumbrance is any right to, or interest in, land which may subsist in third persons to the diminution of the value of the land but consistent with the passing of the fee.

**Cases overruled on one point.**

4.   Rugg v. Hoover, 28 Minn. 404, and Meyer v. Berlandi, 39 Minn. 438, insofar as they hold that the filing of a mechanic's lien statement operates as a creation of the lien are overruled.

**Creation and enforcement of mechanic's lien.**

5.   The coming into existence of the facts which fulfil the statutory requirements to have a mechanic's lien, creates the lien, and, if he who has such lien desires to preserve and enforce it, he must comply with the remedial provisions of the statute providing for the filing of the lien.

[1]Reported in 199 N. W. 6.

**When unfiled and enforceable mechanics' liens are encumbrances.**

6. Where a landowner makes a representation that the land is free of all encumbrances, except a mortgage of $13,750, and at the time there are unpaid bills for labor and material used in a recent construction of a building thereon and for which the creditors are entitled to file and enforce mechanic's lien under the statute, which they later do, such liens are included in the term "encumbrance."

**Proof of criminal intent.**

7. Criminal intent is presumed from the intentional commission of unlawful acts, and the only practical way of proving intent is to prove facts which will raise a reasonable inference as to the intent.

Defendant was indicted by the grand jury of Hennepin county charged with the crime of grand larceny in the first degree, tried in the district court for that county before Montgomery, J., who overruled the demurrer to the indictment and certified to the supreme court the questions stated in the first paragraph of the opinion. Affirmed.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Deputy Attorney General, and *Floyd B. Olson*, County Attorney, for plaintiff.

*William S. Ervin*, for defendant.

WILSON, C. J.

The defendant was indicted by a grand jury of Hennepin county, accusing him of grand larceny in the first degree, and he entered a demurrer thereto on the ground, among others, that the facts stated in the indictment did not constitute a public offense. The trial court overruled the demurrer, but, upon request of defendant, certified to this court two questions: (1) Do the facts stated in the indictment herein constitute a public offense? (2) Does the indictment herein substantially conform to the requirements of sections 9134 and 9136, G. S. 1913, as qualified by section 9142, G. S. 1913?

The indictment says that defendant owned certain real estate valued at $30,000 and that he wilfully, unlawfully, wrongfully, knowingly and feloniously, with intent to cheat and defraud one Mary Moan, falsely pretended and represented to her that said

property was free and clear of all encumbrance, except a mortgage for $13,750, and she, believing these false statements as to encumbrance, and relying thereon, was induced to, and did, accept a warranty deed from defendant in form conveying said premises to her free and clear of all encumbrance, except a mortgage for $13,750, and turned over to defendant bonds, commercial paper and mortgages of the value of $15,699.98 which he received by reason of the false statements and with intent to cheat and defraud Mary Moan; and the indictment alleges that, in addition to said mortgage, said premises were subject to and encumbered by certain mechanics' liens; that defendant theretofore built a house on this real estate and in so doing had contracted for labor and materials aggregating $30,916.14, consisting of seven claims for which liens were thereafter filed, in proper time, as provided by law; and it is alleged that these liens were then valid and subsisting debts and liens against said real estate, and wholly unpaid, all of which defendant then and there well knew. The indictment contains the usual formalities and we have given the mere substance for the sake of brevity.

A portion of section 8870, G. S. 1913, is applicable to this indictment, which reads as follows:

"Every person who, with intent to deprive or defraud the true owner of his property, or the use and benefit thereof, or to appropriate the same to the use of the taker, or any other person—

"(1) Shall take from the possession of the true owner, or of any other person, or obtain from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing, or secrete, withhold or appropriate to his own use, or that of any person other than the true owner, any money, personal property, thing in action, evidence of debt or contract, or article of value of any kind; * * * steals such property and shall be guilty of larceny."

The essential elements necessary to constitute the crime of grand larceny committed by the use of false statements are stated in 25 C. J. 589 in this language:

"To constitute the crime of obtaining property by false pretenses there must be a false representation or statement of a past or existing fact, made by accused or someone instigated by him, with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to deceive the person to whom it is made; a reliance on such false representation or statement; an actual defrauding; and an obtaining of something of value by the accused or someone in his behalf, without compensation to the person from whom it is obtained."

Defendant says that the indictment is insufficient in that it does not show on its face that the alleged false statements to the effect that the real estate was free and clear of all encumbrances, except a certain mortgage, were false. This assertion is predicated upon the claim that the unpaid claims for labor and material did not constitute either liens or encumbrances against the property at that time. If such claims are neither liens nor encumbrances, one of the essential elements of the offense is absent.

This necessitates our consideration of the characteristics of claims for which mechanics' liens may be filed and where they are later, in fact, filed.

In Rugg v. Hoover, 28 Minn. 404, 10 N. W. 473, the court said:

"It is said in argument that the statute relating to mechanics' liens is remedial, and should, therefore, be liberally construed. It is true that the statute gives a security where none existed before; but the lien, being the creature of the statute, can only exist in virtue of a compliance with its provisions. Whatever is necessary to the existence of the lien must be fulfilled, or the attempt to create it will be futile. The statute should be fairly and reasonably construed and applied, so as to afford the security intended, upon a substantial compliance with its requirements, and at the same time afford reasonable protection to the rights of other parties who may have acquired an interest in the property. The filing for record of the verified statement operates as the creation of the lien, and, at the same time, as notice of its existence to all persons interested in the property upon which it is imposed, or who may become so

thereafter, during the life of the lien, and their rights are affected accordingly. It should, therefore, show facts enough to fulfill the statutory requirements for a lien."

And the court also in Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. 663, said:

"The filing of a verified lien statement for record operates as the creation of the lien, and until this is done an action to enforce it cannot be maintained."

The language quoted tends to support the claim of defendant. But this language is used in connection with matters that do not directly involve the subject now under consideration. It is not controlling in our present inquiry. In fact Mr. Justice Mitchell, who used the language in the Meyer case, supra, later criticized it and the case of Rugg v. Hoover, supra, in Bardwell v. Mann, 46 Minn. 285, 286, 48 N. W. 1120, wherein he said:

"Although we have sometimes spoken, perhaps without strict accuracy, of the filing of the lien statement as creating the lien, yet it is merely the means of preserving and perfecting it. It is the performance of the work or the furnishing of the material which, under the statute, gives the right to a lien; and the provisions of the law as to filing the statement are merely remedial in their nature, a change in which works no alteration in the owner's contract, and gives no right to a lien where one did not exist before, but merely provides a somewhat different form of procedure for its preservation and enforcement."

Mechanics' liens attach and take effect from the time the first item is furnished. Section 7023, G. S. 1913; Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918. This and other provisions of the lien statute put a charge upon and against the land. The land is made subject to the burden of paying the lien. The real estate is just as available for the payment of liens, even before they are filed, as to pay an unrecorded mortgage which is certainly an encumbrance. The absolute claim, if an existing lien subsisting in a third party, is a burden upon and is a diminution of the value to

the amount of the lien. It does not conflict with a conveyance of the fee and we think with these attributes, it is included in the term "encumbrance" which is any right to, or interest in, land which may subsist in third persons to the diminution of the value of the land but consistent with the passing of the fee. McNaughton v. Carleton College, 28 Minn. 285, 9 N. W. 805; Fritz v. Pusey, 31 Minn. 368, 18 N. W. 94; Mackey v. Harmon, 34 Minn. 168, 24 N. W. 702; 4 Words & Phrases, 2519; Redmon v. Insurance Co. 51 Wis. 293, 8 N. W. 226, 37 Am. St. 830; Batley v. Foerderer, 162 Pa. St. 460, 466, 29 Atl. 868; Prov. Mut. Bldg. & Loan Assn. v. Shaffer, 2 Cal. App. 216, 83 Pac. 274.

Defendant says that the right of the lienholder is merely an inchoate right which the claimant may assert or which he may not assert, and, whether or not it is claimed, depends wholly upon the will or whim of the person having the inchoate right. We think it more than that. It is not incipient, nor in the beginning, nor is it in itself incomplete. It actually exists; true, it may terminate insofar as the property is concerned, if the lien statement is not filed within the 90 days. The language in Rugg v. Hoover, supra, and in Meyer v. Berlandi, supra, which is criticized in Bardwell v. Mann, 46 Minn. 285, 48 N. W. 1120, can no longer be regarded as the law of the state. Under our present statute the lien attaches from the furnishing of the first item. Section 7023, G. S. 1913. This statutory element was added by chapter 101, p. 224, Laws 1895. The coming into existence of the facts which fulfill the statutory requirements to have a mechanic's lien creates the lien, and, if he who has such lien desires to preserve and enforce it, he must comply with the remedial provisions of the statute providing for the filing of the lien. It is a substantial and valuable right and we must assume that the one owning it will avail himself of it. In the instant case the indictment alleges that the owners of the liens have filed lien statements which are notice that they are claiming their legal rights. The mere fact that, at the time of the alleged offense, the lien statements had not been filed is of minor importance, when the right to file existed, and they were, in fact,

filed within the period provided by law and prior to the finding of the indictment. Under such circumstances such claims are "encumbrances."

Perhaps the principal reason for section 7029, G. S. 1913, requiring a lien statement must be filed before an action can be brought to foreclose the lien, is to enable the plaintiff in foreclosure proceedings to join other lien claimants as parties to the action to simplify and expedite the proceedings, and also as a period of limitation which is obviously beneficial to all who may be interested.

This indictment states that the false representations induced the defrauded party to act. The defendant urges, as another ground of the insufficiency of the allegations of the indictment, that the matters claimed to constitute the false statements are of such character that as a matter of law, the defendant could not have entertained an intent to defraud. It is suggested that defendant had no means of knowing, at the time of the making of the misrepresentations, that he would not be able to pay for the labor and material. The fact that he did not know this, if it is a fact, is the very best reason why he should not be permitted to impose upon the credulity of the others, and deal with them upon the speculative assumption that he might be able to pay them. The possible chance of failure in such case should not have to rest upon the shoulders of his adversary who has risks enough incident to those chances which are properly his as a consequence of honest transactions. In such case as this he knew of this indebtedness and the existing liens incident thereto. Mary Moan did not. He did not tell her. Common honesty should have prompted him to disclose this condition or at least to arrange with the creditors to avoid their liens before he should make the representations disclosed in the indictment. Such conduct was inconsistent with innocence. Under such circumstances the matter of intent is quite evident, and we have no difficulty in finding sufficient allegations to permit the jury in finding the necessary intent on the part of the accused. If the accused has committed the alleged unlawful acts, the criminal intent is presumed from the intentional commission of the acts. The only practical way of proving intent is to prove facts which will raise

a reasonable inference as to the intent. The offense here consists in obtaining property from Mary Moan by false pretense. The intent to defraud is surely a question for the jury when it is alleged that, by such false pretense, he induced her to part with valuable property when she would not otherwise have done so. The offense is complete when the property has been obtained by such means. The contention of the defendant in reference to intent is without merit.

We answer the two inquiries in the affirmative and hence the order of the trial court in overruling the demurrer is affirmed.