## STATE v. M. E. MONSON.[1]

September 17, 1926.

No. 25,392.

**Conviction sustained by evidence.**

1. Evidence examined and found sufficient to support a conviction of grand larceny of money procured by false pretenses.

**Charge to jury not argumentative.**

2. The charge stated first the claims of the state and indicated those that were not disputed by the defendant. Next the claims for the defendant were summarized, and finally the precise issues were stated. The charge *held* not argumentative.

**Charge to jury without error.**

3. The *intent wrongfully and unlawfully to appropriate the money* of another is, of course, a vital element of the offense. The jury was told repeatedly by the instructions that they could not convict without a finding of that intent. There being no request for a further or more specific instruction, the charge is *held* to be without error.

**In absence of specific request for the instructions stated, no error in omitting it.**

4. In this case, notwithstanding the fact that defendant's title was

[1] Reported in 210 N. W. 108.

in danger of destruction through failure to redeem under a mortgage which had already been foreclosed, he would not be guilty of larceny if, when he procured the first instalment of the purchase price under an executory contract of sale, he hoped and in good faith actually intended by the use of that and other hoped for money, to protect his title and make it good in time for conveyance when one was properly called for under the contract. That would be true even if there had been no ground for defendant's hope and intention of performance. It would have been better to instruct the jury precisely along that line. But the absence of such an instruction in this case *held* not error in the absence of a specific request for it and because of the repeated instruction that there could be no conviction without a finding of the unlawful intent to deprive another of his property.

Criminal Law, 16 C. J. p. 1036 n. 62; p. 1059 n. 42.
Larceny, 36 C. J. p. 761 n. 58; p. 899 n. 34.

Defendant was convicted in the district court for Jackson county of the crime of grand larceny in the second degree, before Haycraft, J., and appealed from an order denying his motion for a new trial. Affirmed.

*Albert R. Allen* and *William W. Allen*, for appellant.

*Clifford L. Hilton*, Attorney General, *Charles E. Phillips*, Assistant Attorney General and *B. E. Grottum*, County Attorney, for the state.

STONE, J.

Convicted of grand larceny in the second degree, defendant appeals from the order denying his motion for a new trial.

The charge is that defendant did "feloniously, with intent to deprive and defraud" him of his property, "falsely state, represent and pretend" to one Herman O. Bondhus that a certain tract of land was owned by defendant "free and clear of all liens and encumbrances," for the purpose of inducing the purchase thereof by Bondhus, and that the representations (which, if made, were concededly false) were so far successful as to induce Bondhus to contract with defendant for the purchase of the land and to pay $500 on account of such purchase. It is of the larceny of that $500, by

means of the alleged false misrepresentations referred to, that defendant has been convicted.

1. Defendant was, at the time, the owner of the land but he had mortgaged it for about $10,000. That mortgage had been foreclosed and there were only about six months left of the year allowed for redemption. He not only denies that he represented the land free from encumbrances but avers that he disclosed the existence of the mortgage and that it was "due." (He does not claim to have told Bondhus of the foreclosure.) But there is so much testimony to the contrary that the jury's conclusion that the representations were made cannot be disturbed. Not only is defendant contradicted on the main issue but he was also impeached by disinterested witnesses as to certain more or less collateral claims. There can be no successful attack upon the verdict from the standpoint of insufficiency of the evidence.

2. Other assignments of error criticize the instructions to the jury. One of them is to the effect that the charge was unduly argumentative in favor of the state. In that, we cannot agree. The claims of the state were first rehearsed to the jury. Next, certain of them were referred to as not being disputed by the defense. Then the claims of the defense were summarized, and finally the real issues stated. We find no error in this portion of the charge. If there was inaccuracy in stating the claims on either side or in referring to the evidence, it was not indicated at the time although, at the conclusion of the charge, the court asked counsel if there were any criticisms on the ground of "inaccuracy, omission or misstatement." Counsel for defense replied that there was, but the record indicates that his point was only the somewhat different one which will be considered next.

3. The exception referred to was, in effect, that the charge, in defining the elements of the offense, "didn't include that specific intent * * * the intent to deprive him (Bondhus) of said property." The instruction specifically criticized in the argument here was this:

"One of the features involved in this case was the intention of the defendant. Intent or intention are difficult to define. The

words practically define themselves. It has been stated however by our courts that intent means doing an unlawful act intentionally, that is, freely, purposely. I think I can give you no better definition."

In other portions of the charge, the necessity not only of the actual misrepresentation and the consequent procuring of the property of another, but also "the intent on the part of the defendant to deprive the said H. O. Bondhus of said $500." was repeatedly emphasized. The whole proposition was put in both positive and negative form. The jury was told that, in order to convict, they would have to find the facts as claimed by the state, including the element of wrongful intent to deprive Bondhus of his $500. They were also told that, if they did not find such facts or any of them, including defendant's obtaining and retaining of the money, "all with the intent" on his part "to deprive the said H. O. Bondhus" thereof, they would have to acquit. There was no request for an instruction in any other language and we have concluded that the matter of intent was fairly put before the jury; that they could not have been misled, and that defendant was not prejudiced.

4. Defendant claimed not only that he disclosed to Bondhus the existence of the mortgage but also that he intended, in good faith, to negotiate a new loan on other property with the proceeds of which, plus payments to be made by his vendee, he could redeem from the foreclosed mortgage and so make title in time for performance, within the rule of Johnson v. Herbst, 140 Minn. 147, 167 N. W. 356. In other words, his claim is that he acted in good faith throughout and at no time harbored the intent to defraud which, by the statute (G. S. 1923, § 10,358), is made an essential of the crime of grand larceny perpetrated by false pretenses. State v. Anderson, 159 Minn. 245, 199 N. W. 6; s. c. 166 Minn. 453, 208 N. W. 415. We would like the charge better if it had referred particularly to this claim of the defendant with an instruction to the effect that if, when he made the contract and got the money, he in good faith hoped to be able to clear his title and actually intended so to clear it, in the manner already indicated or otherwise,

in time to perform his contract, he did not harbor the criminal intent necessary to the offense charged against him and would have to be found not guilty even though, from the start, there had been in fact no basis for his hope and no possibility of his carrying out his intention to perform. But, notwithstanding the omission of any specific charge along that line and in view of the repeated instruction that an actual intent, wrongfully to deprive another of his property, was necessary to the offense, we have concluded that the defendant has not been prejudiced. It is true that there is no assignment of error going to the precise point but that omission we would overlook if we felt that prejudice had actually resulted.

There are assignments of error other than those above discussed. They have all been considered and found to present no ground for reversal.

Order affirmed.