STATE, Respondent, v. CHOBOT, Appellant.*

*November 4—November 29, 1960.*

* Motion for rehearing denied, without costs, on February 7, 1961.

For the appellant there were briefs by *Raskin, Zubrensky & Padden,* attorneys, and *Leonard S. Zubrensky* of counsel, all of Milwaukee, and oral argument by *Leonard S. Zubrensky.*

For the respondent the cause was argued by *Richard B. Surges,* assistant district attorney of Milwaukee county, and *William A. Platz,* assistant attorney general, with whom on the brief were *John W. Reynolds,* attorney general, and *William J. McCauley,* district attorney of Milwaukee county.

MARTIN, C. J.   Sec. 944.21 (1) (a), Stats., provides:

"(1) Whoever intentionally does any of the following may be fined not more than $5,000 or imprisoned not more than five years or both:

"(a)   Imports, prints, advertises, sells, has in his pos-session for sale, or publishes, exhibits, or transfers commercially any lewd, obscene, or indecent written matter, picture, sound recording, or film; . . ."

The constitutional provisions here involved are:

Wisconsin constitution, sec. 3, art. I:

"Every person may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press."

Amendments to the United States constitution:

Art. I. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

Sec. 1, art. XIV. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.   No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The test of obscenity which the trial court applied to the exhibits in this case is that enunciated in *Roth v. United States* (1957), 354 U. S. 476, 489, 77 Sup. Ct. 1304, 1 L. Ed. (2d) 1498 (argued and decided with *Alberts v. California*), as follows:

". . . *whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.* The *Hicklin* test [*Regina v. Hicklin* (1868), L. R. 3 Q. B. 360], judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass material

legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press. On the other hand, the substituted standard provides safeguards adequate to withstand the charge of constitutional infirmity." (Emphasis supplied.)

In the *Roth Case* the question was whether the federal obscenity statute violates the free-speech amendment, and in that case conviction was by a jury. In the *Alberts Case* the question was whether the obscenity provisions of the California penal code invaded the freedoms of speech and press as incorporated in the protection of the Fourteenth amendment, and in that case conviction was by the court.

The United States supreme court held in the *Roth Case,* page 485, that "obscenity is not within the area of constitutionally protected speech or press," quoting from *Chaplinsky v. New Hampshire* (1942), 315 U. S. 568, 571, 572, 62 Sup. Ct. 766, 86 L. Ed. 1031, as follows:

" 'There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional problem. These include the lewd and obscene. . . . It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' "

The court rejected the earlier standard of obscenity which permitted material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons and adopted the test referred to above, "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." It affirmed the convictions in both the *Roth* and *Alberts Cases* because in both the proper definition of obscenity was used and both followed the proper

standard. It is noted that in the *Alberts Case* the trial judge indicated that as the trier of the facts he was judging each item as a whole as it would affect a normal person; and the United States supreme court approved the instructions given to the jury in the *Roth Case,* which included the following (p. 490):

" 'The test in each case is the effect of the book, picture, or publication considered as a whole, not upon any particular class, but upon all those whom it is likely to reach. In other words, you determine its impact upon the average person in the community. The books, pictures, and circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion. You judge the circulars, pictures, and publications which have been put in evidence by present-day standards of the community. You may ask yourselves does it offend the common conscience of the community by present-day standards. . . .

" 'In this case, ladies and gentlemen of the jury, you and you alone are the exclusive judges of what the common conscience of the community is, and in determining that conscience you are to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious—men, women, and children.' "

The United States supreme court recognized that terms used in obscenity statutes are not precise (pp. 491, 492):

"This court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . The constitution does not require impossible standards;' all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .' *United States v. Petrillo,* 332 U. S. 1, 7, 8. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '. . . boundaries sufficiently distinct for judges and juries fairly to administer the law. . . . That there may be marginal cases in which

it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. . . .' [Citing cases.]

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

Under these authorities, the words "lewd, obscene, or indecent" used in sec. 944.21 (1) (a), Stats., are not unconstitutionally indefinite. We may agree, as appellant argues, that standards by which obscenity has been judged have changed through the years and such standards may vary as between individuals. It was in recognition of that fact that it was held in the *Roth Case* that the standard to be applied is that of the *average* person, applying *contemporary* community standards. If the dominant theme of the material taken as a whole, and considered by such standards, appeals to prurient interest, it is obscene.

In a note to the *Roth Case,* at page 487, the definition of the A. L. I., Model Penal Code, sec. 207.10 (2) (Tentative Draft No. 6, 1957) is stated as follows:

"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, *i.e.,* a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters."

Appellant argues, citing various psychiatric texts, that there is no relationship between the reading of erotic material and dangerous social behavior. This aspect of the subject is beside the point in deciding the case. As observed by Mr. Justice HARLAN in his concurring opinion in the *Roth Case*—calling attention to the fact that the causal connection between such reading material and crime or delinquency is

a matter on which there are opposing schools of scientific thought—it is not for the court to decide that question. That function is legislative, and the very fact that there is division of opinion on the subject is good reason to respect the choice made by the legislature.

In this case the trial court adopted and applied to the exhibits the standard set forth in the *Roth Case* as the test of obscenity. The court was the finder of the fact, appellant having waived trial by jury. Thus, it was the "exclusive judge of what the common conscience of the community is . . . as a whole."

The court found that the first five exhibits were not obscene material. They are nudist magazines containing photographs of naked men, women, and children, all taken out-of-doors and in casual poses. As observed by the trial court, the individuals in the photographs are not placed in unusual or unnatural close proximity; there are no attitudes of sensuality and no emphasis on genital parts.

It further found that Exhibits 6 and 7, magazines of posed nudes advertised of interest to photographers and artists, were not obscene.

It found Exhibit 10 obscene. That exhibit contains numerous photographs of nudes and seminudes in provocative poses, a great many of them on beds and davenports. These pictures, in the words of the trial court, provide an appropriate setting for two sordid stories. One of these stories describes in highly erotic detail the experiences of a man with a young nymphomaniac and ends with her date with an android, the implication being obvious. The trial court stated, "This story is sordid, indecent, lewd, and in connection with the mechanical contrivance reaches toward depravity." The other story narrates in sensually suggestive description the weekend when a boy of eighteen years "becomes a man" through illicit sex acts with his sister's girl friend. As to this the trial court stated, "people of this

community have different standards of manhood for young boys." These stories, together with the photographs already mentioned, were held to be obscene, as "dirt for dirt's sake." Even the advertisements are unnecessarily beyond the bounds of decency. It is not necessary to go into more detail here; further reference will be left to the cases and briefs.

Exhibits 8, 9, and 12 were likewise held obscene. These are magazines containing photographs of the same description as Exhibit 10.

The trial court stated in its decision:

"The dominant theme of each item of material noted, taken as a whole, to the average person, applying community standards, appeals to prurient interest within the meaning of the rule of the *Roth Case* and is obscene within the meaning of sec. 944.21 (1) (a), Stats., of the Criminal Code of this state."

Appellant calls attention to several cases involving obscenity convictions since the *Roth Case,* where certiorari was granted by the United States supreme court and the judgments reversed without opinion, citing the *Roth Case. Sunshine Book Co. v. Summerfield* (1958), 355 U. S. 372, 78 Sup. Ct. 365, 2 L. Ed. (2d) 352; *One, Inc., v. Olesen* (1958), 355 U. S. 371, 78 Sup. Ct. 364, 2 L. Ed. (2d) 352; *Times Film Corp. v. Chicago* (1957), 355 U. S. 35, 78 Sup. Ct. 115, 2 L. Ed. (2d) 72; *Mounce v. United States* (1957), 355 U. S. 180, 78 Sup. Ct. 267, 2 L. Ed. (2d) 187. It is argued that the effect of these decisions is to change the standard enunciated in the *Roth Case.* Analysis of the cases discloses that the tests of obscenity there applied were not the test set forth and approved in the *Roth Case.* It is apparent that the United States supreme court, in citing the *Roth Case* in each such reversal, has insisted that the test to be applied is that approved in the *Roth Case.*

Appellant contends that he cannot be found guilty of possessing obscene literature if he does not have knowledge of the contents, citing *Smith v. California* (1959), 361 U. S. 147, 80 Sup. Ct. 215, 4 L. Ed. (2d) 205. He testified that he did not read the text or stories in any of the exhibits. The ordinance involved in the *Smith Case,* construed to eliminate the requirement of scienter, was held invalid (p. 153) :

"By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfils its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the state will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature."

In the majority opinion Mr. Justice BRENNAN further stated (p. 154) :

"It is argued that unless the scienter requirement is dispensed with, regulation of the distribution of obscene material will be ineffective, as booksellers will falsely disclaim knowledge of their books' contents or falsely deny reason to suspect their obscenity. We might observe that it has been some time now since the law viewed itself as impotent to explore the actual state of a man's mind."

And Mr. Justice FRANKFURTER, in his concurring opinion, stated (pp. 161, 164) :

"The court accepts the settled principle of constitutional law that traffic in obscene literature may be outlawed as a crime. But it holds that one cannot be made amenable to such criminal outlawry unless he is chargeable with knowledge of the obscenity. Obviously the court is not holding that a bookseller must familiarize himself with the contents of every book in his shop. No less obviously, the court does not hold that a bookseller who insulates himself against knowledge about an offending book is thereby free to maintain an emporium for smut. . . .

"Accordingly, the proof of scienter that is required to make prosecutions for obscenity constitutional cannot be of a nature to nullify for all practical purposes the power of the state to deal with obscenity. Out of regard for the state's interest, the court suggests an unguiding, vague standard for establishing 'awareness' by the bookseller of the contents of a challenged book in contradiction of his disclaimer of knowledge of its contents. A bookseller may, of course, be well aware of the nature of a book and its appeal without having opened its cover, or, in any true sense, having knowledge of the book. As a practical matter therefore the exercise of the constitutional right of a state to regulate obscenity will carry with it some hazard to the dissemination by a bookseller of nonobscene literature. Such difficulties or hazards are inherent in many domains of the law for the simple reason that law cannot avail itself of factors ascertained quantitatively or even wholly impersonally."

Appellant testified he had the exhibits in his possession for sale; that he had looked at the covers and paged through the magazines, looking at the pictures, but he did not read the text or stories. It was the trial court's opinion that even the most-cursory examination of Exhibit 8 would make him aware of its appeal to the prurient interest, and we agree.

It is argued by appellant that the test of "clear and present danger" is applicable to the law of obscenity, relying on language in the dissent of Mr. Justice DOUGLAS in the *Roth Case*. The other cases referred to were all decided before the decision in the *Roth Case*. As Mr. Justice BRENNAN stated in the majority opinion (p. 486), in the light of the holding that obscenity is not protected speech, it is unnecessary for the courts to consider the issues behind the phrase " 'clear and present danger.' " "Certainly no one would contend that obscene speech, . . . may be punished only upon a showing of such circumstances."

*By the Court.*—Judgment affirmed.