STATE v. ARVID OMAN.

110 N. W. (2d) 514.

September 1, 1961—No. 38,383.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, and *Einer C. Iversen,* County Attorney, for the state.

*William J. Nierengarten,* for defendant.

NELSON, JUSTICE.

The defendant was charged with unlawfully selling and having in his possession, with intent to sell, certain obscene or indecent magazines, pamphlets, or story papers containing pictures and photographs, in violation of Minn. St. 617.24,[1] said violation constituting the crime of selling and possessing indecent literature against the form of the statute.

The defendant demurred to the information on the following specific grounds:

---

[1]Minn. St. 617.24 reads as follows:

"Every person who shall:

"(1) Sell, lend, give away, or offer to give away, show, or have in his possession with intent to sell, give away, show, advertise, or otherwise offer for loan, gift, sale or distribution, any obscene or indecent book, obscene or indecent motion picture, magazine, pamphlet, newspaper, story paper, writing, picture, drawing, photograph, or any article or instrument of indecent or immoral character; or who shall design, copy, draw, photograph, print, utter, publish, or otherwise prepare such a book, picture, drawing, paper, or other article; or write or print, or cause to be written or printed, a circular, advertisement, or notice of any kind, or give oral information stating when, where, how, or of whom or by what means such an indecent or obscene article or thing can be purchased or obtained;

"(2) Exhibit upon any public road, street, or other place within view of any minor, any of the books, papers, or obscene or indecent billboards or other things hereinbefore enumerated; or

"(3) Hire, use, or employ any minor to sell or give away, or in any manner distribute, or shall permit any minor in his custody or control to sell, give away, or in any manner distribute, any of the articles hereinbefore mentioned—

"Shall be guilty of a gross misdemeanor and be punished by imprisonment in the county jail for not more than one year, nor less than 90 days, or by a fine of not less than $100, nor more than $500, or by both."

"(A)   That on its face the information does not substantially conform to the requirements of Sec. 628.10 to Sec. 628.13, as qualified by Sec. 628.18, all in violation of M. S. A., Sec. 630.23. That the objection of M. S. A., Sec. 628.10 and M. S. A., Sec. 628.18 both refer to the fact that the information shall contain a statement of acts constituting the offense in ordinary and concise language and that the act or omission charged as the offense be clearly and distinctly set forth in the information.

"(B) That the facts stated in the information do not constitute a public offense within the meaning of M. S. A., Sec. 630.23, Subd. 4.

"(C) That M. S. A., Sec. 617.24 is unconstitutional in that the words 'obscene' or 'indecent,' standing alone undefined in the statute do not conform to constitutional requirements with regard to what constitutes the crime involved.

"(D) That M. S. A., Sec. 617.24 is unconstitutional in that it deprives defendant of his right to the exercise of freedom of speech and freedom of press and liberty of circulation, all as guaranteed by the provisions of Article I, Sec. 3 and Article I, Sec. 7 of the Constitution of Minnesota as well as the due process provisions of the First and Fourteenth Amendments to the Constitution of the United States.

"(E) That the application of M. S. A., Sec. 617.24 to the above action, as proposed by the State of Minnesota in its information, would be in clear violation of the foregoing State and Federal Constitutional limitations thereon."

The trial court overruled the demurrer certifying the questions of law arising upon the demurrer to be so important or doubtful as to require a decision of this court.

The defendant contends that the terms "obscene" and "indecent," forming the crux of the information, are so vague and indefinite of meaning that they fail to comply with the requirements of Minnesota statutes governing the terminology used in criminal informations and that therefore the information fails by its own terms.

In the instant case three magazines were introduced at the preliminary hearing in municipal court. The criminal complaint filed with that court alleged that defendant sold and had in his possession certain obscene

and indecent magazines in violation of § 617.24. The presiding municipal judge upon completion of the preliminary hearing made an order stating:

"* * * this Court makes no ruling as to whether or not the defendant is innocent or guilty, but orders that he be bound over for trial in District Court."

■ The United States Supreme Court in Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. (2d) 1498, held that the standard for judging obscenity, adequate to withstand the charge of constitutional infirmity, is whether, to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest. The court further held that obscenity is not within the area of constitutionally protected speech or press either under the First or Fourteenth Amendment. In that regard the court in the Roth case stated (354 U. S. 481, 77 S. Ct. 1307, 1 L. ed. [2d] 1505):

"The dispositive question is whether obscenity is utterance within the area of protected speech and press. Although this is the first time the question has been squarely presented to this Court, either under the First Amendment or under the Fourteenth Amendment, expressions found in numerous opinions indicate that this Court has always assumed that obscenity is not protected by the freedoms of speech and press. * * *

* * * * *

"All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance."

No fact issue has been presented in the instant case concerning the obscenity of the material involved since no testimony was taken in the court below.

The defendant cites and relies upon Smith v. California, 361 U. S. 147, 80 S. Ct. 215, 4 L. ed. (2d) 205. In reversing People v. Smith, 161 Cal. App. (2d) Supp. 860, 327 P. (2d) 636, the United States Supreme Court commented (361 U. S. 154, 80 S. Ct. 219, 4 L. ed. [2d] 212):

"We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity need be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not, and what such circumstances might be. Doubtless any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene, but we consider today only one which goes to the extent of eliminating all mental elements from the crime.

"We have said: 'The fundamental freedoms of speech and press have contributed greatly to the development and well-being of our free society and are indispensable to its continued growth. Ceaseless vigilance is the watchword to prevent their erosion by Congress or by the States. The door barring federal and state intrusion into this area cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests.' Roth v. United States, * * *. This ordinance opens that door too far. The existence of the State's power to prevent the distribution of obscene matter does not mean that there can be no constitutional barrier to any form of practical exercise of that power. Cf. Dean Milk Co. v. Madison, 340 U. S. 349. It is plain to us that the ordinance in question, though aimed at obscene matter, has such a tendency to inhibit constitutionally protected expression that it cannot stand under the Constitution."

The ordinance involved in that case, Municipal Code of the City of Los Angeles, § 41.01.1, provided:

"It shall be unlawful for any person to have in his possession any obscene or indecent writing, book, pamphlet, picture, photograph, draw-

ing, figure, motion picture film, phonograph recording, wire recording or transcription of any kind in any of the following places: * * *."

The Los Angeles ordinance imposed a strict or absolute criminal responsibility not to have obscene books in a shop. It was argued in that case that unless the scienter requirement is dispensed with regulation of the distribution of obscene material will be ineffective as booksellers will falsely disclaim knowledge of their books' contents or falsely deny reason to suspect their obscenity.

■ The United States Supreme Court in Chaplinsky v. New Hampshire, 315 U. S. 568, 62 S. Ct. 766, 86 L. ed. 1031, held that obscenity is not within the area of constitutionally protected speech or press. Later in the Roth case, it recognized that terms used in obscenity statutes are not precise but stated (354 U. S. 491, 77 S. Ct. 1312, 1 L. ed. [2d] 1510):

"* * * This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U. S. 1, 7, 8. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '* * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. * * *' [Citing cases.]

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

Mr. Chief Justice Gallagher in State v. Northwest Poultry & Egg Co. 203 Minn. 438, 440, 281 N. W. 753, 754, following decisions of the United States Supreme Court said:

"The uncertainty hit at is not the difficulty of ascertaining whether

close cases fall within or without the prohibition of a statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved. * * *

"Due process requires that penal legislation expressed in general and flexible terms furnish a test based on knowable criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command."

■ The state poses the question whether defendant or his counsel could read § 617.24 and know that defendant's conduct was forbidden. We said recently in State v. Moseng, 254 Minn. 263, 269, 95 N. W. (2d) 6, 12, that:

"* * * Reasonable certainty, however, has been held sufficient."

We cannot agree that in the instant case defendant does not know of what he is accused by the information filed against him. Upon examination of § 617.24, and especially that part which provides that every person "who shall * * * [s]ell * * * or have in his possession with intent to sell, * * * any obscene or indecent book, magazine, [or] pamphlet * * * [s]hall be guilty of a gross misdemeanor," it is our opinion, and we so construe the statute, that the definition of the crime is instinct with the idea of scienter.

A reading of the statute as a whole clearly indicates that only those who are in some manner aware of the character of the material they attempt to distribute should be punished. It is not innocent but calculated purveyance of filth which is exorcised, and a mere omission of the word "scienter" need not be construed as an attempt to eliminate that common-law element of the crime. People v. Finkelstein, 9 N. Y. (2d) 342, 214 N. Y. S. (2d) 363; see, Morissette v. United States, 342 U. S. 246, 72 S. Ct. 240, 96 L. ed. 288.

The New York court in the Finkelstein case said (9 N. Y. [2d] 344, 214 N. Y. S. [2d] 364):

"* * * the United States Supreme Court declared unconstitutional a Los Angeles City Ordinance which proscribed, *and was construed to impose strict liability for,* MERE POSSESSION of obscene prints, regard-

less of the offender's awareness of the contents. The New York proscription,[2] on the other hand, neither expressly, nor by our construction here, dispenses with this vital element of *scienter*, and, therefore, in no way impinges upon the traditional freedom guarantees of speech and the press (Roth v. United States, * * *).

\* \* \* \* \*

"In any event, the statute is at least susceptible of either interpretation, and we are, therefore, clearly obliged by statute and decisional law to embrace that which will preserve its validity. [Citing authorities and cases.]"

■ We apply in this state the rule recognized in the Finkelstein case that no statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with the fundamental law. Although our statute might possibly be interpreted to exclude scienter we feel, as the New York court did, guided by the strong constitutional presumption attending legislative enactments and that our statute was also not intended to unreasonably restrict or inhibit our inalienable liberty protected by due process.

Mr. Justice Frankfurter in his concurring opinion in Smith v. California, *supra,* said (361 U. S. 161, 80 S. Ct. 223, 4 L. ed. [2d] 216):

"\* \* \* the Court does not hold that a bookseller who insulates himself against knowledge about an offending book is thereby free to maintain an emporium for smut. \* \* \*

\* \* \* \* \*

"Accordingly, the proof of scienter that is required to make prosecutions for obscenity constitutional cannot be of a nature to nullify for all practical purposes the power of the State to deal with obscenity."

■ In State v. Chobot, 12 Wis. (2d) 110, 106 N. W. (2d) 286, the Wisconsin court considered Wis. Stat. § 944.21 (1), which provides:

"Whoever intentionally does any of the following may be fined \* \* \* or imprisoned \* \* \* or both:

---

[2]The New York Penal Laws, § 1141, provides: "A person who sells \* \* \* or has in his possession with intent to sell \* \* \* any obscene \* \* \* book \* \* \* [i]s guilty of a misdemeanor, \* \* \*."

"(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film; * * *."

It was stated there by Mr. Chief Justice Martin that (12 Wis. [2d] 115, 106 N. W. [2d] 289):

"* * * the words 'lewd, obscene or indecent' used in [the statute] are not unconstitutionally indefinite. We may agree * * * that standards by which obscenity have been judged have changed through the years and such standards may vary as between individuals."

The Wisconsin court in the Chobot case also held that the test of "clear and present danger" is not applicable to the law of obscenity.

We feel impelled also to reach the conclusion that the words "obscene or indecent" as used in § 617.24 are not unconstitutionally indefinite, and, furthermore, that they are not violative of the Constitution of the United States or of this state. While it is clear from the defendant's brief and the cases cited therein that there is a disagreement among some of the courts of the country on the foregoing issues, recent opinions taking the opposite view are based on the ground that the act involved indicated a clear and unequivocal intention of the legislative body to impose strict criminal liability without any element of scienter on the part of the person charged. The Roth case deals with the subject of reasonable standards for judging obscenity and reviews the cases. The Roth case was decided in 1957 and deals with the constitutionality of a Federal obscenity statute. Wisconsin in State v. Chobot, *supra,* and New York in People v. Finkelstein, *supra,* rely upon the Roth case and have adopted the standard for judging obscenity, adequate to withstand the charge of constitutional infirmity, which, as stated in the Roth case, is whether, to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.

Following the appeal in the instant case the Minnesota legislature, which was then in session, passed L. 1961, c. 664,[3] repealing § 617.24.

---

[3]L. 1961, c. 664, § 1, provides: "It is unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute,

It will be noted that the new statute leaves out the words, "with intent," and substitutes: "It is unlawful for any person knowingly to exhibit, [or] sell, * * * any obscene book, magazine, pamphlet, paper, writing * * *." It defines "obscene" in accordance with the rule laid down in the Roth case.

While the new statute was not made retroactive it nevertheless indicates, we think, to some extent the intent of the legislature as to the former statute.

The defendant is of the opinion that statutes similar to § 617.24 are void because they fail to make it specifically essential to the completed crime that defendant committed the forbidden act knowingly or with guilty knowledge. Added to this, defendant contends that the statute lacks validity because the words "obscene or indecent" are not defined in the statute itself.

Our statute resembles Wis. Stat. § 944.21 in that the act must be intentionally done. In State v. Chobot, *supra,* the Wisconsin court held that the words "obscene or indecent" were not constitutionally indefinite and relied upon the Roth case. The Wisconsin Supreme Court, as did the United States Supreme Court, recognized that the words "obscene or indecent" vary in connotation according to the moral standards of the time and the moral standards of the persons using them but, when they were considered according to the standard set forth in the Roth case, they were sufficiently definite.

Defendant contends that § 617.24 is ambiguous. We do not agree. There is nothing in the statute that would prevent the words "obscene or indecent" from being construed according to their common and ap-

---

or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene. 'Obscene' for the purpose of this section, is defined as follows: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests.

"Any person violating any provision of this section shall be fined not less than $20 nor more than $100 for each offense."

proved usage, as determined in the Roth, Chobot, and Finkelstein cases and in our newly enacted statute. Minn. St. 645.08 (1) provides:

"Words * * * are construed * * * according to their common and approved usage * * *."[4]

■ The New York court in People v. Finkelstein, *supra,* in construing their obscenity statute stated (9 N. Y. [2d] 344, 214 N. Y. S. [2d] 364):

"* * * It is our firm opinion, on this our first opportunity to construe the statute, in this respect, that the definition of the crime is instinct with the idea of *scienter.*"

In Near v. Minnesota, 283 U. S. 697, 51 S. Ct. 625, 75 L. ed. 1357, Mr. Chief Justice Hughes, speaking for the court, made it clear that it is no longer open to doubt that the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action and that, nevertheless, in maintaining this guarantee the authority of the state to enact laws to promote the health, safety, morals, and general welfare of its people is necessarily admitted. The limits of this sovereign power are always to be determined with appropriate regard to the particular subject of its exercise.

In State v. Lanesboro Produce & Hatchery Co. 221 Minn. 246, 265, 21 N. W. (2d) 792, 800, 163 A. L. R. 1108, 1119, Mr. Chief Justice Loring stated in his dissenting opinion:

"* * * When we apply our state due process clause, we are not bound to follow any interpretive relaxation of the inhibitions of the Fourteenth Amendment made by the Supreme Court of the United States. We are bound by the decisions of that court as to what the due process clause of the Fourteenth Amendment prohibits; but, in interpreting our own clause, we are not bound to follow what that court says is not a violation of the Fourteenth Amendment. We should exercise our own judicial judgment as to what we deem a violation of our own constitution."

---

[4]The words "obscene" and "indecent" are defined in 29 Wd. & Phr. (Perm. ed.) p. 68; 20A Id. p. 521.

■ The charge against defendant does not, in our judgment, clearly eliminate the element of scienter as did the ordinance in Smith v. California, *supra,* which imposed a strict and absolute criminal liability. The use of the words "possession with intent to sell" in § 617.24 in our view makes it necessary for the state to prove guilty knowledge on the part of defendant.

As stated by the United States Supreme Court in Speiser v. Randall, 357 U. S. 513, 524, 78 S. Ct. 1332, 1341, 2 L. ed. (2d) 1460, 1471:

"'* * * Of course, the burden of going forward with the evidence at some stages of a criminal trial may be placed on the defendant, but only after the State has 'proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, * * *.'"

It is our view that the foregoing statute may be construed as not imposing strict criminal liability upon the accused, but, if the charges made against defendant are proven beyond a reasonable doubt, such proof would permit an inference of guilt and require the defendant to go forward with his evidence showing either lack of guilty knowledge or such other defense as he relies upon.

■ We decide, as did the Wisconsin court in the Chobot case, that if the dominant theme of material, taken as a whole and considered by contemporary community standards, appeals to prurient interest, it is "obscene or indecent" within the statute proscribing the sale or possession for sale of such matter.

We conclude that the proscription of the Minnesota statute never expressly dispenses with the vital element of scienter and therefore in no way impinges upon the traditional guarantees of freedom of speech and the press. Roth v. United States, *supra.*

Affirmed.

FRANK T. GALLAGHER, JUSTICE (concurring specially).

Inasmuch as we are bound by the principle enunciated in Smith v. California, 361 U. S. 147, 80 S. Ct. 215, 4 L. ed. (2d) 205, that scienter or knowledge of the contents of the alleged obscene and indecent printed matter is necessary, it seems to me that we should define what we mean by "knowledge."

Mr. Justice Brennan in the majority opinion in the Smith case stated (361 U. S. 154, 80 S. Ct. 219, 4 L. ed. [2d] 211):

"It is argued that unless the scienter requirement is dispensed with, regulation of the distribution of obscene material will be ineffective, as booksellers will falsely disclaim knowledge of their books' contents or falsely deny reason to suspect their obscenity. We might observe that it has been some time now since the law viewed itself as impotent to explore the actual state of a man's mind. See Pound, The Role of the Will in Law, 68 Harv. L. Rev. 1. Cf. American Communications Assn. v. Douds, 339 U. S. 382, 411. Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial."

He then went on to state:

"We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity need be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not, and what such circumstances might be. Doubtless any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene, but we consider today only one which goes to the extent of eliminating all mental elements from the crime."

It is obvious from the opinion of Mr. Justice Brennan that while he limited his opinion strictly to the Los Angeles ordinance in that case, which he claimed (361 U. S. 155, 80 S. Ct. 220, 4 L. ed. [2d] 213) "opens that door [barring intrusion upon the freedoms of speech and press] too far," he was still recognizing but not passing upon the question of what kind of knowledge a bookseller must have with respect to the books he is selling.

Mr. Justice Frankfurter in a concurring opinion in the Smith case also

recognized the question of the extent of knowledge required by sellers of various types of printed matter. In that connection he stated (361 U. S. 161, 80 S. Ct. 223, 4 L. ed. [2d] 216):

"The Court accepts the settled principle of constitutional law that traffic in obscene literature may be outlawed as a crime. But it holds that one cannot be made amenable to such criminal outlawry unless he is chargeable with knowledge of the obscenity. Obviously the Court is not holding that a bookseller must familiarize himself with the contents of every book in his shop. No less obviously, the Court does not hold that a bookseller who insulates himself against knowledge about an offending book is thereby free to maintain an emporium for smut. How much or how little awareness that a book may be found to be obscene suffices to establish scienter, or what kind of evidence may satisfy the how much or the how little, the Court leaves for another day."

That justice then went on to say in effect that while he did not favor deciding cases beyond what the immediate controversy required, nevertheless a case before the supreme court is not just a case. It was his contention that inevitably its disposition carries implications and gives directions beyond the particular facts of the case involved. He further stated (361 U. S. 162, 80 S. Ct. 223, 4 L. ed. [2d] 216):

"* * * It ought at least to be made clear, and not left for future litigation, that the Court's decision in its practical effect is not intended to nullify the conceded power of the State to prohibit booksellers from trafficking in obscene literature."

It appears to me that we have such a situation here. It is undisputed that Minn. St. 617.24, involved in the instant case, has been repealed by L. 1961, c. 664, which provides that "it is unlawful for any person knowingly * * *." While § 617.24, the statute applicable here, will be of no effect with respect to any alleged violations of c. 664, it still seems to me that our opinion here will necessarily carry implications which may be considered by some as directions pertaining to violations of that chapter. For that reason, I believe that some consideration should be given herein as to interpretation of the instant case with reference to future cases under the new law.

Where the word "knowingly" is used in a criminal statute, it is necessary to prove knowledge of facts on the part of the accused sufficient to constitute the act or omission a crime but not that the accused knew that the act or omission itself was unlawful. People v. Shapiro, 4 N. Y. (2d) 597, 176 N. Y. S. (2d) 632, 69 A. L. R. (2d) 973; 5 Dunnell, Dig. (3 ed.) § 2409.

From an examination of the exhibits involved in this case it would seem that a jury could conclude under the record here that a reasonably prudent person having opportunity to observe would have knowledge of the type of publications he was selling even though he expressly denied such knowledge.

It therefore follows that even though the accused should deny knowledge of the contents of the printed matter which he allegedly sold the state should still be permitted to show the facts and circumstances under which the sales were made, and whether from displays, advertisements, and other conditions in the seller's place of business it is so obvious that the printed matter was indecent and obscene that any ordinary dealer could observe for himself the nature of the material without investigating each page of its contents.

If any effect is to be given to a law passed for the purpose of eliminating or suppressing obscene and indecent printed material, which is flooding the country to the recognized detriment and demoralization of countless people, particularly youth, the seller of such materials should not be permitted to defeat the purpose of the law merely by saying he has no knowledge of the contents of the publications he is selling when such publications are so openly and flagrantly obscene and indecent that an ordinary person passing a newsstand, for example, can recognize them as such. In my opinion, courts and juries would indeed have to be naive to exonerate a dealer under such circumstances by a mere disclaimer on his part, when in many cases a casual glance or examination of the publications would almost instantly reveal their obscene and indecent nature.

In conclusion, while the element of "knowledge" must be proved to sustain a conviction under the statute here involved, the jury can find the existence of such knowledge from any relevant circumstances pointing to the probability that the defendant obtained knowledge of the na-

ture of the materials sold by him prior to the sale, including the direct exposure of the "literature" to his sense of sight. See, 2 Wigmore, Evidence (3 ed.) §§ 244, 245. "Knowledge" is like "intent," of which this court has said: "The only practical way of proving intent is to prove facts which will raise a reasonable inference as to the intent." State v. Anderson, 159 Minn. 245, 251, 199 N. W. 6, 8.

"Knowledge" may be positive or imputed and may result from personal observation or from information imparted by others and while "knowledge" is distinguishable from belief, information, and suspicion, *means of knowledge may be equivalent to knowledge.* State v. Perkins, 181 La. 997, 160 So. 789.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.