**Oscar OESTREICH, Plaintiff,**

**v.**

**Everett B. HALE, Individually and as City Attorney of the City of Manitowoc, Wisconsin; Elmer H. Scherer, Individually and as Chief of Police of the City of Manitowoc, Wisconsin, John L. Krey, Individually and as Mayor of the City of Manitowoc, Wisconsin, Their Agents, Assistants, Successors, Employees, Attorneys, and all Persons Acting in Concert or Cooperation with Them or at Their Direction or Under Their Control, Defendants.**

**Civ. A. No. 69–C–566.**

United States District Court,
E. D. Wisconsin.

Dec. 7, 1970.

Percy L. Julian, Jr., Madison, Wis., and Robert H. Friebert, Milwaukee, Wis., for plaintiff.

Everett B. Hale, City Atty., Manitowoc, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge.

This is an action which challenges the constitutionality of an ordinance of the City of Manitowoc, Wisconsin, dealing with "Obscene Pictures and Literature." The plaintiff is employed by an establishment in Manitowoc known as Karmel Korn which sells a wide variety of newspapers and magazines. The defendants are officials of the City of Manitowoc, Wisconsin.

The ordinance at issue is § 14.18 of the Municipal Code of the City of Manitowoc which reads as follows:

"Any person who shall have in his or her possession or control for sale, exhibition or distribution, or who shall sell, exhibit, give away or distribute upon or within any street, alley, park, school building or school room, hall, theatre, show house, store or other place of business or entertainment any book, magazine, publication, pamphlet, film, paper or other thing containing obscene, salacious, demoralizing, lewd or otherwise immoral language, print, picture or figure, or make or cause to be made any indecent representation on any walk, building, railing, wall or other place and exposed to public view and tending to the corruption of morals shall be punished on conviction thereof by a fine of not more than Five Hundred Dollars."

The following facts are not in dispute. On September 26, 1969, a Manitowoc police officer entered the premises of Karmel Korn in Manitowoc and purchased three magazines from the plaintiff. The police officer then informed the plaintiff that he would have to appear in court. Thereafter, the plaintiff was charged under § 14.18 of the Municipal Code of the City of Manitowoc for allegedly selling the magazines in question to the police officer.

In the complaint filed with this court, the plaintiff seeks declaratory and injunctive relief with regard to § 14.18. On March 18, 1970, the plaintiff filed a motion for summary judgment with regard to both declaratory and injunctive issues. However, at the hearing held on plaintiff's motion for summary judgment, the plaintiff withdrew his request for injunctive relief with the court's permission. Hence, the issue presently before this court is the plaintiff's motion for summary judgment regarding his claim which seeks a declaratory judgment that § 14.18 of the Municipal Code of the City of Manitowoc is unconstitutional on its face.

I find that jurisdiction is present. 28 U.S.C. § 1343(3); 42 U.S.C. § 1983. I further find that there is present a genuine case or controversy affording a basis for this action seeking a declaratory judgment. The plaintiff has the requisite standing to challenge

the constitutionality of § 14.18 without necessarily showing that his conduct at the time of arrest was constitutionally protected. Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965). The obscenity of the magazines involved in plaintiff's prosecution is not at issue in this proceeding. The issue is the facial validity of § 14.18 under the First and Fourteenth Amendments.

■ It is important to stress at the outset that this case involves the area of fundamental freedoms protected under the First and Fourteenth Amendments to the Constitution. The plaintiff challenges the ordinance at issue, § 14.18 of the Municipal Code of the City of Manitowoc, as being impermissibly vague and overbroad. In this type of case, the Supreme Court has stated:

"[I]n appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar. Thornhill v. Alabama, 310 U.S. 88, 97–98 [60 S.Ct. 736, 741–742, 84 L.Ed. 1093]; Winters v. New York, *supra,* [333 U.S. 507] at 518–520 [68 S.Ct. 665, 92 L.Ed. 840]. Cf. Staub v. City of Baxley, 355 U.S. 313 [78 S.Ct. 277, 2 L.Ed.2d 302]. * * *" N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L. Ed.2d 405 (1963).

Further, when a statute or ordinance is challenged as being vague and overbroad where the First Amendment is involved, it is important to note that:

"* * * the vagueness doctrine is not to be conceived as being limited solely to the concept of fair notice as an element of substantive due process. The vagueness doctrine embodies a First Amendment concept as well:

"'The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in

the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' NAACP v. Button, 371 U.S. 415, 432–433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

"'Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer.' Ashton v. Kentucky, 384 U.S. 195, 200, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966)." Soglin v. Kauffman, 295 F.Supp. 978, 985 (W.D.Wis.1968).

The Manitowoc ordinance prohibits "possession or control for sale, exhibition or distribution" or the selling, exhibiting, giving away or distribution "* * * upon or within any street, alley, park, school building or school room, hall, theatre, show house, store or other place of business or entertainment [of] any book, magazine, publication, pamphlet, film, paper or other thing containing *obscene, salacious, demoralizing, lewd or otherwise immoral* language, print, picture or figure, * * *." (Emphasis supplied.)

■ Plaintiff challenges the vagueness and overbreadth of the words utilized in the ordinance to describe the prohibited materials. Even were we to assume that the state courts would treat the word "obscene" and possibly even the words "lewd" and "salacious" as embodying the standards of obscenity set forth by the United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), [see State v. Chobot, 12 Wis.2d 110, 106 N.W.2d 286 (1960)], an assumption which assumes that the word "otherwise" before "otherwise immoral" will not be given its common-sense interpretation, namely, that the previous words are all to be defined in terms of some notion of "morality," we are still left with the words "demoralizing" and "immoral." I view those two words as hopelessly vague.

448

The defendants maintain that reference to a dictionary is not too much to expect of persons possibly subject to the law or responsible for its enforcement. With regard to words like "demoralizing" and "otherwise immoral," I find that contention to be without merit. Reference to the dictionary does not furnish the requisite clarity. Webster's Third New International Dictionary (unabridged 1966) defines "demoralize" as follows: "to corrupt or undermine in morals or moral principle * * *: to destroy the morals or morale of:" etc. Likewise, the word "immoral" is defined as "not moral: inconsistent with purity or good morals: contrary to conscience or moral law:" etc.

I do not believe that it is necessary to set forth the myriad hypothetical situations in which activity protected by the First Amendment could be viewed as "destroy[ing] the * * * morale" of Manitowoc or as "contrary to conscience," depending upon who was defining morale or whose conscience was involved. Viewed from the point of view of citizens attempting to regulate their conduct so as not to contravene the prohibitions of the ordinance or from the point of view of enforcement personnel attempting to apply the ordinance, it is far too vague. If it were to be contended that the ordinance in its use of words of prohibition like "demoralizing" and "immoral" was not vague, a position I find untenable, then the ordinance would be fatally overbroad.

The Manitowoc ordinance goes on to state that any person making or causing to be made *any indecent representation* on any walk, building, railing, wall or other place and exposed to public view and *tending to the corruption of morals* shall be punished on conviction thereof by a fine of not more than Five Hundred Dollars." (Emphasis supplied.) What is an "indecent representation * * * tending to the corruption of morals"? I find the phrase "any indecent representation * * * tending to the corruption of morals" to suffer from the same infirmities noted above with regard to words like "demoralizing" and "immoral." "[I]ndecent representation * * * tending to the corruption of morals," like "demoralizing" and "immoral," is not defined anywhere in the ordinance. Unlike words like "obscene," the above-discussed words and phrases do not have a history of interpretation and construction. Rather, they stand as broad, vague prohibitions susceptible to having their content and scope determined in varying situations at the discretion of enforcement authorities. When the state attempts to regulate what books, magazines, publications, pamphlets, films, papers, or other things may be sold, exhibited, distributed, or given away, it must do so carefully and narrowly. When, instead, the state attempts regulation through means that are vague and broad, there is the grave danger of "chilling" the exercise of constitutionally-protected rights and freedoms.

"Such a deterrent effect on the exercise of these rights is impermissible under the First Amendment. The Amendment was designed not only to protect these rights, but also to encourage their use. Consequently, the requirements of clarity, definiteness, and narrow scope are most strictly observed when a statute places a possible limitation upon First Amendment rights. Such scrutiny is necessary to provide a buffer between the valid exercise of the police power by the state and excessive restriction of the free dissemination of ideas." Landry v. Daley, 280 F.Supp. 938, 952 (N.D.Ill. 1968).

I find that § 14.18 of the Municipal Code of the City of Manitowoc, in attempting to regulate in the area of the First Amendment, lacks the requisite narrowness and specificity. The City has attempted to regulate what books, magazines, publications, films, etc., may be sold, distributed, exhibited, or given away on the basis of undefined, abstract concepts such as morality and morale. "If the statute is so obscure that men of common intelligence must necessarily

guess at its meaning and differ as to its applicability, it is unconstitutional." Landry v. Daley, supra, at 951, and cases cited therein. Persons in Manitowoc must inevitably "guess" as to whether or not a particular book, magazine, film, or "other thing" is "demoralizing" or "otherwise immoral" and whether or not something is an "indecent representation * * * tending to the corruption of morals."

I find that § 14.18 of the Municipal Code of the City of Manitowoc is unconstitutionally vague and overbroad on its face and that the plaintiff is, therefore, entitled to a declaration to that effect.*

Therefore, on the basis of the above and the entire record herein,

It is ordered and adjudged that § 14.-18 of the Municipal Code of the City of Manitowoc is unconstitutional and invalid on its face because it violates the First and Fourteenth Amendments to the Constitution by reason of its vagueness and overbreadth.

---

\* In view of the result reached herein, I do not find it necessary to consider the plaintiff's further contentions with regard to the overbreadth of § 14.18 which involve interpretation of the recent Supreme Court opinion in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).