STATE, Respondent, v. REICHERT, Appellant.

*No. State 88. Submitted under sec. (Rule) 251.54 February 5, 1975.—Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 196.)

For the appellant the cause was submitted on the brief of *James A. Walrath* and *Shellow & Shellow*, all of Milwaukee; and for the respondent the cause was submitted on the brief of *Robert W. Warren*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

BEILFUSS, J.    Although several issues have been raised by the parties, we have chosen to discuss only those which we consider necessary to determine the appeal.

The defendant's first contention is that the complaints in Cases G–8595 and G–8617 were defective because of their failure to allege scienter, and that the county court was thus deprived of jurisdiction to proceed.

The charging portions of the complaints in Cases G–8595 and G–8617 provide that on the given dates, at 831 North 27th Street, Milwaukee, the defendant:

". . . did feloniously have in his possession for sale obscene pictures, to wit: a magazine entitled 'Denmark' ['Calle' in Case G–8617] containing pictures of nude and semi-nude women in provocative poses, with emphasis on the genital parts, contrary to Section 944.21 (1) (a) of the statutes . . . ."

In *State v. Schneider* (1973), 60 Wis. 2d 563, 211 N. W. 2d 630, we held that an allegation of scienter, or criminal intent, in a criminal complaint was a jurisdictional prerequisite in obscenity cases and that, absent such allegation, the complaint charges no offense known to law and the proceedings are void *ab initio*. We also pointed out in *Schneider* that an allegation that certain conduct was performed "feloniously" does not amount to an allegation of scienter.

By a divided court, based on *Schneider,* we hold that the complaints in Cases G–8595 and G–8617 were jurisdictionally inadequate and the judgments in such cases must be vacated.

In Case H–189, although the complaint and information sufficiently alleged scienter, the conviction was obtained under a statute that was unconstitutionally vague at the time. We hold that *Madison v. Nickel* (1974), 66 Wis. 2d 71, 223 N. W. 2d 865, controls, and the case must be remanded for a new trial.

The controlling Wisconsin decision regarding the definition of obscenity, both at the time of the offenses and at the time of conviction, was *State v. Voshart* (1968), 39 Wis. 2d 419, 429, 15° N. W. 2d 1, where this court introduced the *Roth-Memoirs* [1] test. Under such test, material was legally obscene if:

". . . '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.' . . ."

In *Miller v. California* (1973), 413 U. S. 15, 23, 24, 93 Sup. Ct. 2607, 37 L. Ed. 2d 419, the United States Supreme Court repudiated the *Roth-Memoirs* test, stating:

". . . the *Memoirs* test has been abandoned. . . and no Member of the Court today supports the *Memoirs* formulation.

". . . we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest

---

[1] *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498; *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 86 Sup. Ct. 975, 16 L. Ed. 2d 1.

in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest. . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . ."

The defendant raises the same three specific objections that were raised in *State ex rel. Chobot v. Circuit Court* (1973), 61 Wis. 2d 354, 212 N. W. 2d 690, and in *Nickel, supra:* (1) That the question of whether statewide or national community standards should be applied had not been decided; (2) that the now-infirm "utterly without any redeeming social value" test was applied; and (3) that the law at that time contained no specific definition of sexual conduct, the depiction of which was proscribed.

With respect to community standards, it is to be noted that although *"Miller* rejected 'contemporary community standards' on a national scale as unworkable, [t]his court has never accepted a national community standard." *State ex rel. Chobot v. Circuit Court, supra,* page 364. As stated in *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 149, 121 N. W. 2d 545, "We conclude that for the purposes of our statute, no distinction ought to be made between the standards of different communities within the state." Thus it is apparent that a statewide standard was the rule prior to the conduct and convictions in the case at bar.

As to the element of social value, this court stated in *State ex rel. Chobot, supra,* pages 365, 366:

"In *McCauley v. Tropic of Cancer, supra,* this court took the view that a literary work had to have a 'serious

purpose' and we stated: '. . . we are of the opinion that where a work of apparent serious purpose is involved, the scales will not readily be tipped toward the determination of obscenity.' Thus this court in its construction of the *Roth* test required a serious purpose to constitute social value. So far as Wisconsin is concerned, all *Miller* has done is to limit the concept of 'social value' to a more restrictive literary, artistic, political or scientific sense; all of which are of social value. Consequently, *Miller* made no substantial change in this respect in the Wisconsin interpretation."

Thus it also appears that there has been no change in the "social value" test subsequent to the conduct and convictions in the case at bar.

Prior to *Chobot,* however, there was no specific definition of proscribed sexual depictions. As noted in *Nickel, supra,* page 77:

"The court held in *Chobot* that the only inadequacy in sec. 944.21, Stats., was that it did not contain an express definition of prohibited depiction of sexual conduct. The problem was corrected by the court's 'authoritative construction' specifically authorized by *Miller, supra.* By this court's construction, the word 'obscene' was defined to mean:

" '. . . works which depict or describe sexual conduct and (1) which taken as a whole appeal to the prurient interest in sex, (2) which taken as a whole portray sexual conduct in a patently offensive way and (3) which taken as a whole do not have serious literary, artistic, political or scientific value. Whether a work appeals to the prurient interest and whether it depicts or describes sexual conduct in a patently offensive way and whether it has serious literary, artistic, political or scientific value are to be determined by its effect upon the average person applying contemporary community standards. . . . [See, however, *Mishkin v. New York* (1966), 383 U. S. 502, 86 Sup. Ct. 958, 16 L. Ed. 2d 56.] Sexual conduct is defined to be acts of sexual intercourse between humans, normal or perverted, actual or simulated, acts of masturbation, fellatio, cunnilingus, and acts of ex-

cretory function, lewd exhibition of the genitals especially in a stimulated condition and sexual relations between humans and animals. . . .' *Chobot, supra,* pages 369, 370.

In this construction, the court incorporated all the *Miller* requirements and rejected the *Roth-Memoirs* standards, even though the only significant change was the definition of prohibited conduct."

In *Nickel, supra,* this court held that because the defendant there had been convicted under an ordinance which did not contain a specific definition of the proscribed sexual depictions, she was entitled to a new trial under the *Chobot* definition. The same result must obtain here. As stated in *Hamling v. United States* (1974), 418 U. S. 87, 98–102, 94 Sup. Ct. 2887, 41 L. Ed. 2d 590:

"The principal question presented by this case is what rules of law shall govern obscenity convictions that occurred prior to the date on which this Court's decision in *Miller v. California, supra,* and its companion cases were handed down, but which had not at that point become final. . . .

"  . . .

"Our *Miller* decisions dealing with the constitutional aspects of obscenity prosecutions were announced after the petitioners had been found guilty. . . Our prior decisions establish a general rule that a change in the law occurring after a relevant event in a case will be given effect while the case is on direct review. *United States v. Schooner Peggy,* 1 Cranch 103 (1801) ; *Linkletter v. Walker,* 381 U. S. 618, 627 (1965) ; *Bradley v. School Board of Richmond,* 416 U. S. 696, 711 (1974). . . ."

In *Nickel, supra,* we said at pages 81, 82:

"Having thus construed the ordinance, the question arises as to whether it may be applied to the defendant here. Relying again on *Chobot,* we believe it can be. In dealing with this same question in *Chobot,* we noted that since the mandates of the United States Supreme Court in *Miller, supra,* and its companion cases did not reverse

the convictions but only remanded for further proceedings not inconsistent with that decision, the United States Supreme Court intended the new standards to be applied retroactively. This court held that the primary consideration was whether the new formulation was 'so unforeseeable as to preclude its retroactive application to punish conduct occurring prior to the rendition of this construction.' *Chobot, supra,* page 371. We concluded that it was not.

" '. . . The changes and modifications wrought by *Miller* are not so substantial in view of this court's prior interpretations of the statute that due process requires that a defendant be given notice of the latest modifications. Nor are the changes so serious as to mislead one intent on obeying the law. . . . the definition of obscenity in *Miller* covers less ground than the previous interpretation of the statute by this court and in that respect Chobot cannot be hurt and should be tried under the interpretation of sec. 944.21 (1) (a), Stats., herein declared.' *Chobot, supra,* page 372.

"The same reasoning applies to the instant case.

"Because the magazines in the case at bar need to be tested in light of the entire new formulation, *i.e.,* all three elements, including the relevant definitions of proscribed sexual conduct and community standards, this case is to be remanded for a new trial. . . .''

Therefore we conclude that Case H–189 must be remanded for a new trial in light of the *Miller, Chobot* and *Nickel* decisions and the standards they incorporate.

*By the Court.*—Judgments vacated as to Cases G–8595 and G–8617. Judgment reversed and new trial ordered as to Case H–189.