STATE, Plaintiff-Respondent, v. PRINCESS CINEMA OF MILWAUKEE, INC., Defendant-Appellant.†

Court of Appeals

*Nos. 78–472–CR, 78–473–CR. Argued April 9, 1979.—Decided May 11, 1979.*
(Also reported in 280 N.W.2d 323.)

† Petition to review granted.

544

For the plaintiff-respondent there were briefs and oral argument by *James H. Schaefer,* assistant district attorney, with whom on the brief was *E. Michael Mc-Cann,* district attorney.

For the defendant-appellant there were briefs and oral argument by *John H. Weston* of *Fleishman, Brown, Weston & Rohde* of Beverly Hills, California, with whom

on the brief was *Shellow & Shellow* of Milwaukee, Wisconsin.

Before Decker, C.J., Cannon, P.J., and Moser, J.

CANNON, P.J.   Princess Cinema of Milwaukee, Inc., the defendant-appellant, is a Wisconsin corporation which operates a motion picture theater in downtown Milwaukee. Between April, 1977, and August, 1977, the Milwaukee Police Department seized 20 motion pictures from the defendant, pursuant to search warrants issued by various Milwaukee county judges. Three of the films were exhibited at the theater before May 23, 1977. A criminal information was issued June 7, 1977, charging the defendant with two counts of violating sec. 944.21 (1) (a), Stats, which read:

Whoever intentionally does any of the following may be fined not more than $5,000 or imprisoned not more than 5 years or both:

(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film;[1]

A second information was filed August 19, 1977, alleging an additional 18 violations, of sec. 944.21(1) (a), Stats.[2]

On March 16, 1978, the defendants filed a motion to suppress the seized films on the ground that sec. 944.21 (1) (a), Stats. as interpreted by the Wisconsin Supreme Court, violates the first and fourteenth amendments to the United States Constitution. This motion was denied by order and memorandum decision of the trial court. On July 6, 1978, the defendant entered a plea of *nolo*

---

[1] Effective June 1, 1978, this statute was modified in a manner inconsequential to this appeal.

[2] Each information was subject to a separate appeal to this court, where they were consolidated for review.

*contendere* to all 20 counts. An appeal from the judgment of conviction, and the order denying the motion to suppress, was filed September 26, 1978. The defendant also filed a motion to bypass, pursuant to sec. 808.05, Stats., but this was denied by the supreme court on March 14, 1979.

## BACKGROUND TO THE CASE

The United States Supreme Court has been attempting for years to develop a workable method for determining the extent of that amorphous term, obscenity.[3] The U.S. Supreme Court signaled its entry into the field of defining obscenity, and analyzing the constitutional limitations of obscenity regulation, in *Roth v. United States,* 354 U.S. 476, 484 (1957). In that case, the court found that:

All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance.

A trend toward minimal regulation of obscenity culminated in 1966 with *Memoirs v. Massachusetts,* 383

---

[3] As Judge Campell wrote in a concurring decision in *United States v. Palladino,* 475 F.2d 65, 75 (1st Cir. 1973), *vacated,* 93 S. Ct. 3066 (1973):

"Obscenity" or "pornography" is not a word susceptible to close analysis and definition. Essentially they are pejoratives, indicating material which arouses disgust in someone. Unless one is to sanction banning all materials which any substantial body of opinion might regard as disgusting—a position inviting an intolerable degree of censorship in view of the many different standards today prevailing, and one properly rejected by the Supreme Court—one is left with the virtually impossible task of selecting out that which is "really" bad from that which is not quite so bad.

U.S. 413, 418 (1966). Under the rule formulated in *Memoirs*, a work could be judged obscene only if all three of the following elements were present:

"(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."[4]

It should be noted that each time the U. S. Supreme Court modified its method for determining obscenity in compliance with the first amendment of the federal constitution, the Wisconsin Supreme Court brought sec. 944.21(1)(a), Stats. into conformity. Thus *State v. Chobot*, 12 Wis.2d 110, 106 N.W.2d 286 (1960) adopted the *Roth* test, and in *State v. Voshart*, 39 Wis.2d 419, 159 N.W.2d 1 (1968), the Wisconsin court modified its prior construction of the obscenity statute to reflect the *Memoirs* formulation.

In 1973, the U. S. Supreme Court capped six years of relative silence on the obscenity issue by deciding *Miller v. California*, 413 U.S. 15 (1973). The Court, abandoning the "utterly without redeeming social value" test of *Memoirs* as unworkable, promulgated a new test:

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken

---

[4] One scholar, in commenting on *Memoirs*, stated:

By requiring that material be utterly without redeeming social value in order to escape constitutional protection, the *Memoirs* decision in fact embodied the "hard-core only" trend that had been growing since *Roth*, and paved the way for seven years of extremely minimal regulation of obscenity. (SCHAUER, F., THE LAW OF OBSCENITY, at 43 (1976)).

as a whole, lacks serious literary, artistic, political, or scientific value. *Miller, supra* at 24.

The Court did not explicitly hold whether the third prong, the "serious literary, artistic, political or scientific value test" (hereafter "serious value" test), was to be determined by contemporary community standards or by a uniform and objective national standard. As in *Memoirs,* however, all three tests had to be met for a work to be deemed obscene.

*State ex rel. Chobot v. Circuit Court,*[5] 61 Wis.2d 354, 212 N.W.2d 690 (1973) was the first obscenity case which came before the Wisconsin Supreme Court after *Miller.* Early in the *Chobot* opinion, the court drew what appeared to be a distinction between standards for implementing the first two tests, and the standard for implementing the "serious value" test:

What appeals to "prurient interest in sex" must be judged by community standards. What amounts to "patently offensive" in the manner of description is not expressly defined in *Miller,* but it is reasonable to read this term, too, as being determined by contemporary community standards (*see* our comment, page 149, in *McCauley v. Tropic of Cancer* (1963), 20 Wis.2d 134, 121 N.W.2d 545). There is no vagueness in the commonly accepted meaning of the terms "literary, artistic, political or scientific value" and these are qualified by the adjective "serious" which means important and not trifling. *Chobot, supra* at 360.

However, later in the opinion, the court offered this explicit language in summation:

We, therefore, construe the word "obscene" in sec. 944.21 (1)(a), Stats., to mean works which depict or describe sexual conduct, and (1) which taken as a whole appeal

---

[5] All further references to *Chobot* in this opinion will indicate the 1973 *Chobot* case, not the 1960 *Chobot* case mentioned earlier.

to the prurient interest in sex, (2) which taken as a whole portray sexual conduct in a patently offensive way and (3) which taken as a whole do not have serious literary, artistic, political or scientific value. Whether a work appeals to the prurient interest and whether it depicts or describes sexual conduct in a patently offensive way *and whether it has serious literary, artistic, political or scientific value are to be determined by its effect upon the average person applying contemporary community standards.* [Emphasis supplied.] *Chobot, supra* at 369–70.

This language was implicitly reaffirmed on rehearing, 61 Wis.2d 374(a), 374(b) (1974). Thus, although earlier language in the opinion is vague, the summation language in *Chobot* is clear that obscenity under sec. 944.21(1)(a) is to be determined by applying contemporary community standards to all three tests.[6]

*Chobot* was followed a year later by *Madison v. Nickel,* 66 Wis.2d 71, 77, 223 N.W.2d 865 (1974). In finding that part of a Madison obscenity ordinance was unconstitutional, the court restated the explicit language in *Chobot* which applied community standards to all three tests. In *State v. Reichert,* 67 Wis.2d 69, 74–75, 226 N.W.2d 196 (1975), the court quoted *Chobot* for the proposition that contemporary community standards are to be applied in using all three tests. Thus, the language in *Chobot* was implicitly reaffirmed in two later cases, although the precise issue, *i.e.,* whether a uniform and objective national standard or community standard

[6] The court in *Chobot, supra* at 370, holding that sec. 944.21(1)(a), Stats. lacked a definition of obscenity in terms of sexual conduct, formulated the following definition of the latter term:

Sexual conduct is defined to be acts of sexual intercourse between humans, normal or perverted, actual or simulated, acts of masturbation, fellatio, cunnilingus, and acts of excretory function, lewd exhibition of the genitals especially in a stimulated condition and sexual relations between humans and animals.

should be applied to the third test, was not directly in question.[7]

## CONSTITUTIONALITY OF SEC. 944.21(1)(a)

The district attorney, the trial court, and counsel for Princess Cinema all assume that in *Miller* the federal court held that the "serious value" test was not to be determined by reference to contemporary community standards. They contend that the explicit language in *Chobot* requiring use of contemporary community values in applying the "serious value" test is in conflict with *Miller*. Princess Cinema argues this conflict causes the Wisconsin obscenity statute to be in violation of the first amendment to the federal constitution.

The district attorney and trial court contend that the Wisconsin Supreme Court in the *Chobot-Nickel-Reichert* trilogy did not "intend to apply contemporary community standards to the "serious value" test, and therefore merely made a mistake in that explicit language. They conclude that since the Wisconsin Supreme Court did not intend to violate the standards promulgated in Miller, the language in *Chobot* should not be viewed as causing sec. 944.21(1)(a), Stats. to be in violation of *Miller* and the first amendment.

---

[7] The court in *Reichert, supra* at 75, stated the following regarding the definition of "community" to be applied in obscenity cases:

With respect to community standards, it is to be noted that although "*Miller* rejected 'contemporary community standards' on a national scale as unworkable, [t]his court has never accepted a national community standard." [Cite omitted.] As stated in *McCauley v. Tropic of Cancer* (1963), 20 Wis.2d 134, 149, 121 N.W.2d 545, "We conclude that for the purposes of our statute, no distinction ought to be made between the standards of different communities within the state." Thus it is apparent that a statewide standard was the rule prior to the conduct and convictions in the case at bar.

We strongly disagree with the initial assumption by both parties and the trial court, that the U. S. Supreme Court in *Miller* prohibited the use of contemporary community standards in applying the "serious value" test. A thorough reading of *Miller* indicates that the U. S. Supreme Court was quite vague in detailing whether contemporary community standards were to be applied to the "serious value" test. Admittedly, most legal authorities considering the issue have concluded that the Court in *Miller* did not intend contemporary community standards to be used in applying the "serious value" test.[8] However, that position is not unanimous.[9] Because of

[8] The view that the community standards formula applied only to the first two tests and not the "serious literary value" test has been affirmed directly in only one federal case, *United States v. Heyman*, 562 F.2d 316, 318 (4th Cir. 1977). In *Heyman* a federal trial judge instructed the jury to use "community standards" in determining whether the material in question was of artistic, scientific, or literary value. The Fourth Circuit Court found on appeal that "nowhere does [*Miller*] suggest that the . . . value of sexually oriented expression is to be judged on such a parochial basis," and it vacated the judgment of the lower court.

Law review articles advocating this position include *Community Standards, Class Actions, and Obscenity under Miller v. California*, 88 Harv. L. Rev. 1838, 1854 (1975); *Notes*, Mont. L. Rev. 293 (1975), wherein the author wrote:

The Court, [in *Miller*] did not mention the serious value element when it was discussing local standards, raising the inference that serious value remained to be determined by national standards; and

Schauer, *Reflections on "Contemporary Community Standards": The Perpetration of an Irrelevant Concept in the Law of Obscenity*, 56 N.C.L. Rev. 1, 21, n. 101 (1978).

[9] In Sorensen, *Community Standards and the Regulation of Obscenity*, 24 Depaul L. Rev. 185, 193 (1974), the author recognized the problem of interpretation left to trial courts:

The practical importance of the community standard reformulation of *Miller v. California* is as yet unknown. If the appellate courts should strictly construe and positively enforce the other criteria the Supreme Court has enunciated, particularly by requiring a lack of serious literary or artistic value, without apply-

this vagueness, the Wisconsin Supreme Court, without being in conflict with *Miller,* could in its discretion apply either community or national standards to the "seriour value" test. The Wisconsin court concluded that *Miller* sanctioned the use of contemporary community standards in employing the "serious value" test. Against this background, we cannot find that the Wisconsin Supreme Court in the Chobot-Nickel-Reichert trilogy, gave sec. 944.21(1)(a), Stats. a construction that was unconstitutionally different from that dictated by the U. S. Supreme Court in *Miller.*

After *Miller* and the *Chobot-Nickel Reichert* trilogy, the U. S. Supreme Court once again dealt with this issue in *Smith v. State,* 431 U.S. 291, 300–01 (1977) in which the Court stated :

[1] The phrasing of the *Miller* test makes clear that contemporary community standards take on meaning only when they are considered with reference to the underlying questions of fact that must be resolved in an obscenity case. The test itself shows that appeal to the prurient interest is one such question of fact for the jury to resolve. The *Miller* opinion indicates that patent offensiveness is to be treated in the same way. . . . Literary, artistic, political, or scientific value, on the other hand, is not discussed in *Miller* in terms of contemporary community standards.

ing community standards to those two criteria, the degree of local community control realized could be fairly insignificant. If, on the other hand, the courts should apply local standards, to the concept of literary or artistic value, the effects of this portion of *Miller* could be serious and far-reaching. The *Miller* opinion does not yet offer the potential defendant in an obscenity case the degree of certainty necessary to allow him to conform his conduct to that standard. And certainly prosecutors, who responded to *Miller* with a flurry of activity, need some clarification in order to more fairly apply the decision to their own cases.

Also *see* Schoen, *Billy Jenkins and Eternal Verities: The 1973 Obscenity Cases,* 50 N.D.L. Rev. 567, 590 (1974).

In this case, the U. S. Supreme Court was finally making clear that the "serious value" test is not henceforth to be determined by contemporary community standards. Therefore, after *Smith*, Wisconsin's construction of sec. 944.21(1)(a), Stats., is no longer in compliance with first amendment requirements. In order to bring sec. 944.21(1)(a), Stats. into compliance with *Smith* and the first amendment, we hold that the serious literary, artistic, political, or scientific value test shall henceforth be employed not by using contemporary community standards, but by using uniform and objective national standards. By applying this construction, the court is following the long line of Wisconsin Supreme Court cases which have repeatedly brought the Wisconsin obscenity statute into conformity with requirements enunciated by the U. S. Supreme Court.

*Smith* was decided on May 23, 1977. Three counts against the defendant involved movies shown prior to this date. We have noted that prior to May 23, 1977, the Wisconsin Supreme Court held that contemporary community values were to be used in applying all three tests under sec. 944.21(1)(a), Stats. Thus, on counts involving movies shown before May 23, 1977, the trial court was incorrect in finding, as part of its suppression opinion, that the "serious value" test was not to be interpreted pursuant to contemporary community standards. Since the defendant pleaded *nolo contendere* to these three counts, no trial was held; thus, the trial court did not employ an incorrect method in determining obscenity. However, the defendant may have been prejudiced by the trial court's incorrect interpretation of *Miller* and *Chobot*. Therefore, the judgment of conviction and the pleas of *nolo contendere* are vacated on those three counts, and the cause remanded for additional proceedings.

It is contended that the construction of sec. 944.21(1)(a), Stats. that we adopt today cannot be applied retroactively, because the defendant had no fair warning of such construction. However, the Wisconsin Supreme Court has previously determined that new constructions of the obscenity statute may be applied retroactively. In *Chobot, supra* at 370–72, the Wisconsin Supreme Court, in first adopting the *Miller* standards, noted:

The supreme court has long recognized that once a limiting construction of a criminal statute is rendered which is sufficient to rehabilitate the potential vagueness of the statute, such construction may be applied to punish conduct occurring prior to the construction. [Cites omitted.] This doctrine, however, is subject to the limitation that such application affords fair warning to the defendants. [Cites omitted.]

The court then determined whether the retroactive adoption of the *Miller* standards complied with due process: "The question thus is whether the foregoing construction [in *Chobot*] was so unforeseeable as to preclude its retroactive application to punish conduct occurring prior to the rendition of this construction." In determining that it was not unforeseeable, the court wrote:

Miller has not made such drastic changes in the law of obscenity that the now *Roth-Memoirs-Miller* test needs to be specifically brought to the attention of all persons before it can be said that the notice comports with due process. The changes and modifications wrought by *Miller* are not so substantial in view of this court's prior interpretations of the statute that due process requires that a defendant be given notice of the latest modifications. Nor are the changes so serious as to mislead one intent on obeying the law.

Likewise, in this case, it can hardly be argued that the changes brought about by *Smith* and this opinion on the

interpretation of sec. 944.21 (1) (a), Stats. are so substantial that due process requires that the defendant be given prior notice of the new construction. The defendant has retained counsel who is well aware of federal obscenity cases. If there is prejudice, the defendant has not called it to this court's attention.

The last 17 counts in the information relate to events occurring after the date of the *Smith* opinion. On these 17 counts, the defendant is charged with knowledge that contemporary community standards are not to be used in employing the "serious value" test. The defendant is therefore charged with the new construction of sec. 944.21 (1) (a) statute we promulgate today.

Although we have disagreed in part with the trial court's memorandum decision, it was correct in finding that sec. 944.21 (1) (a), Stats. is constitutional. It was also correct in denying defendant's motion to suppress evidence seized for use in a prosecution under that statute. Since the trial court noted the proper standard to apply for post-*Smith* obscenity prosecution, no prejudice resulted to the defendant on the last counts, so the judgment of conviction on those counts are affirmed. On the first three counts, the cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—Affirmed in part, reversed in part and cause remanded.