STATE of Wisconsin, Plaintiff-Respondent,

v.

PRINCESS CINEMA OF MILWAUKEE, INC., Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 78–472–CR, 78–473–CR. Argued May 6, 1980.—Decided June 3, 1980.*

(Also reported in 292 N.W.2d 807.)

For appellant-petitioner there were briefs by *John H. Weston* and *Fleishman, Brown, Weston & Rohde* of Beverly Hills, California; and *Stephen M. Glynn* and *Shellow & Shellow* of Milwaukee, and oral argument by *John H. Weston* of Beverly Hills.

For the plaintiff-respondent the cause was argued by *James H. Schaefer,* assistant district attorney, with whom on briefs was *E. Michael McCann,* district attorney of Milwaukee County.

DAY, J.    The principal question presented for review is whether the criminal obscenity statute is unconstitutionally vague and overbroad.  Sec. 944.21(1)(a), Stats. 1977.  We conclude that it is overbroad and we decline to further judicially modify the statute to bring it within the strictures of the First Amendment as interpreted by the United States Supreme Court.

Between April and August 1977, twenty motion pictures were seized as evidence by the officers of the Milwaukee Police Department from the Princess Cinema, a motion picture theatre operated by the defendant Princess Cinema of Milwaukee, Inc.  Search warrants authorizing seizure of the films were issued after hearings were held before a trial judge for the purpose of determining whether there existed probable cause that the films exhibited at the theatre were obscene.[1]

A motion to suppress the films as evidence at trial, and a motion to dismiss the prosecution, were filed by the defendant.  In the motion to suppress it was asserted that the obscenity statute, sec. 944.21(1)(a), Stats. 1977, was unconstitutional on its face and as construed by this

---

[1] The transcript of the hearing for determining probable cause for the first two counts is not in the record.

court. The trial judge in ruling on the motion, concluded that this court's decision in *State ex rel. Chobot v. Circuit Court,* 61 Wis.2d 354, 212 N.W.2d 690 (1973), adopted the constitutional standards for defining obscenity which were enumerated in *Miller v. California,* 413 U. S. 15 (1973), and engrafted those standards onto the obscenity statute. The trial judge recognized that in formulating the standards to be applied to define obscenity, this court in *State ex rel. Chobot v. Circuit Court, supra,* deviated from the *Miller v. California* standards. He concluded, however, that any misstatement by the court was unintentional and refused to construe *State ex rel. Chobot* as intending to differ in any constitutionally significant manner from *Miller v. California.* The trial court concluded that the obscenity statute as interpreted by this court was constitutional, and on that basis, denied the motion to suppress.

The defendant thereupon entered a plea of no contest to each of the twenty counts. A notice of appeal was filed from the judgment of conviction and the order denying the motion to suppress. Review of an order denying a motion to suppress may be had pursuant to sec. 971.31(10), Stats. 1977, which provides:

"971.31. **Motions before trial.** . . . (10) An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

Although the statute does not expressly refer to pleas of no contest, this court has stated that except as to collateral effects, a plea of no contest is equivalent to a plea of guilty, *see, Cross v. State,* 45 Wis.2d 593, 599, 173 N.W.2d 589 (1970), and we have reviewed an order denying a motion to suppress pursuant to sec. 971.31 (10), Stats., even when the defendant has entered a plea

of no contest. *Scott v. State*, 73 Wis.2d 504, 508, 243 N.W.2d 215 (1976).

An issue addressed by the defendant only briefly in his petition to appeal is whether the unconstitutionality of the obscenity statute automatically renders the search and seizure unlawful and therefore subject to a motion to suppress. The defendant merely assumes that if the obscenity statute is unconstitutional, the materials seized under a search warrant executed according to the proper procedural standards, should be suppressed. We do not agree. In *Michigan v. DeFillippo*, 443 U.S. 31, 40 (1979), the United States Supreme Court held that the subsequent determination that an ordinance forming the basis for an arrest was unconstitutional, did not render the initial arrest and the search incident to that arrest unlawful under the Fourth Amendment. Probable cause is to be determined on the basis of information known to the officer or magistrate at the time of the arrest or search. "The purpose of the exclusionary rule is to deter unlawful police action. No conceivable purpose of deterrence would be served by suppressing evidence which, at the time it was found . . . , was the product of a . . . lawful search. To deter police from enforcing a presumptively valid statute was never remotely in the contemplation of even the most zealous advocate of the exclusionary rule." *Michigan v. DeFillippo*, 443 U.S. at 38 (n. 3). Generally speaking, the later found unconstitutionality of the underlaying substantive statute is not relevant on a motion to suppress.[2] W. R. LaFave, *Search*

[2] "If . . . probable cause is to be determined on the basis of the information known . . . at the time of the . . . search, and if, as the Supreme Court has held, probable cause involves 'the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians act,' then as a general matter the later-determined unconstitutionality of the statute is simply not relevant." W. R. LaFave, *Search And Seizure, A Treatise On The Fourth Amendment*, vol. 1, §3.2 (1978);

*And Seizure, A Treatise On The Fourth Amendment,*
vol. 1, §3.2 (1978). The Supreme Court in *Michigan v.
DeFillippo, supra,* drew a distinction between statutes
which by their own terms authorized searches under
circumstances which did not satisfy the traditional war-
rant and probable cause requirements of the Fourth
Amendment,[3] and the statute involved in that case where
its only relevance to the validity of the arrest and sub-
sequent search was as it pertained to the "facts and
circumstances" constituting probable cause. *Michigan v.
DeFillippo,* 443 U.S. at 39–40.

This is not to say that the constitutionality of the
substantive statute under which the defendant was ar-
rested cannot be challenged. It is simply that the motion
to suppress, as a general rule, is not the proper vehicle
for doing so. However, because we determine that the
issue presented here can be reviewed by this court via
another route, it is not necessary for us to determine
whether the interplay between the First and Fourth
Amendment freedoms in this case constitutes an excep-
tion from the holding of *Michigan v. DeFillippo,* or
whether there exist other factors which would materially
distinguish the two cases. We are also mindful of the
possibility, which exists in every case involving the
chance that protected expression may be suppressed, that
prior restraint may be implicated.

*see also, United States v. Bush,* 582 F.2d 1016, 1019–20 (5th Cir.
1978).

[3] This rationale would also distinguish the present case from
cases such as, *Roaden v. Kentucky,* 413 U.S. 496 (1973); *Lee Art
Theatre v. Virginia,* 392 U.S. 636 (1968); *Marcus v. Search War-
rant,* 367 U.S. 717 (1962); and most recently, *LO–Ji Sales, Inc.
v. New York,* 442 U.S. 319 (1979), where the procedure by which
the allegedly obscene materials were seized did not meet the re-
quirements of the First, Fourth, or Fourteenth Amendments de-
pending on the scope of official activity involved in each case.

Just as a plea of guilty, when voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses including claims of violations of constitutional rights prior to the plea, *Mack v. State,* 93 Wis.2d 287, 293, 286 N.W.2d 563 (1980), so too will a plea of no contest. *See, Cross v. State, supra.* However, on the basis of the statewide importance of the matter and in the interest of justice, and in spite of possible waiver, we choose to consider the constitutional question presented.[4] *See, Mack v. State,* 93 Wis.2d at 296–297; *Flores v. State,* 69 Wis.2d 509, 510, 230 N.W.2d 637 (1975).

The court of appeals in an opinion published at 90 Wis.2d 543, 280 N.W.2d 323 (Ct. App. 1979), held that it was not clear until the United States Supreme Court's decision in *Smith v. United States,* 431 U.S. 291 (1977), that an objective standard was to be applied to the determination of serious literary, artistic, political, or scientific value under *Miller v. California.* The court of appeals concluded that this court retained discretion to apply community standards to the third part of the *Miller* test until *Smith v. United States* was handed down. The court of appeals then construed sec. 944.21(1)(a), Stats., to incorporate an objective standard to determine the serious literary, artistic, political, or scientific value of the work. The judgment of conviction on three counts consisting of movies shown prior to the date of decision in *Smith v. United States* was vacated and remanded for additional proceedings because "the defendant may have been prejudiced by the trial court's incorrect interpretation of *Miller* and *Chobot."* 90 Wis.2d at 553. The remaining seventeen counts were based on movies shown

---

[4] We do not decide whether the defendant was entitled to bring its constitutional claim as a matter of right. *See, Menna v. New York,* 423 U.S. 61 (1975); *Blackledge v. Perry,* 417 U.S. 21 (1974); and *Mack v. State,* 93 Wis.2d at 293 (n. 1).

after the decision in *Smith v. United States*. As to these counts the conviction was affirmed based on the court of appeals' new construction of the obscenity statute.

The defendant contends that sec. 944.21(1)(a), Stats., is unconstitutionally vague and overbroad on its face and as construed by this court; that application of a "corrected" interpretation of the statute cannot be retroactively applied; and that in any case, the statute should not be given another judicial interpretation, but rather the obligation of redrafting a constitutionally acceptable obscenity statute should be left to the legislature. We agree that the statute is unconstitutionally overbroad and we decline to construe the statute to bring it within constitutional limits.

Sec. 944.21(1)(a), Stats. provides:

"944.21. **Lewd, obscene or indecent matter, pictures and performances.** (1) Whoever intentionally does any of the following is guilty of a Class D. felony:

"(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film; or . . ."

This statute is facially vague and overbroad and has survived constitutional scrutiny only through repeated saving judicial interpretations.[5] As it turns out, one of our attempts to save the statute by judicial interpreta-

[5] *State v. Chobot*, 12 Wis.2d 110, 106 N.W.2d 286 (1960), adopting the standards announced in *Roth v. United States*, 354 U.S. 476 (1957); *State v. Amato*, 49 Wis.2d 638, 183 N.W.2d 29 (1971), (see fn. 2); *State v. Kois*, 51 Wis.2d 668, 188 N.W.2d 467 (1971) *reversed sub nom., Kois v. Wisconsin*, 408 U.S. 229 (1972); *see, McCauley v. Tropic Of Cancer*, 20 Wis.2d 134, 121 N.W.2d 545 (1963); *State v. Voshart*, 39 Wis.2d 419, 159 N.W.2d 1 (1968); *Court v. State*, 51 Wis.2d 683, 188 N.W.2d 475 (1971), *vacated* 413 U.S. 911 (1973) *affirmed on remand*, 63 Wis.2d 570, 217 N.W.2d 676 (1974). (On remand it was held that *Miller* mandated independent judicial review of only the "serious social value" aspect of the obscenity standards).

tion is itself constitutionally deficient. Thus, we begin by acknowledging the constitutional error present in our interpretation of sec. 944.21(1)(a), Stats., in *State ex rel. Chobot v. Circuit Court, supra.* There is little to be gained from an attempt to rationalize or to construe that decision in a manner which would obviate the constitutional deficiency present in that case.[6] The constitutional standards for assessing whether a particular item is obscene and therefore may be subject to criminal sanctions were set out in *Miller v. California,* 413 U.S. 15, 24 (1973). This three part test requires a determination:

". . . (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* at 230, quoting *Roth v. United States, supra,* at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

The third component of this test is the primary subject of controversy in the present case. In *State ex rel. Chobot v. Circuit Court,* this court instructed that when assessing whether the work lacks serious literary, artistic, political, or scientific value the trier of fact was to apply contemporary community standards.[7] This was clear

---

[6] Federal courts have upheld the constitutionality of sec. 944.21 (1)(a), Stats., as construed by this court in *State ex rel. Chobot v. Circuit Court,* 61 Wis.2d 354, 212 N.W.2d 690 (1973). *Amato v. Divine,* 558 F.2d 364 (7th Cir. 1977) [On remand from the United States Supreme Court it was held that sec. 944.21(1)(a), Stats. as construed in *Chobot* was not vague but the granting of a writ of *habeas corpus* by the district court was affirmed on the grounds that upon independent appellate review the state conviction was based on materials which were not obscene.]; *Castle News Company v. Cahill,* 461 F. Supp. 174 (E.D. Wis. 1978); [The district court recognized that *Chobot* and later cases of this court misstated the *Miller v. California* test in its application of contemporary community standards, but found that "as a whole" the decision complied with *Miller.* 461 F. Supp. at 180.]

error. "Literary, artistic, political, or scientific value . . . is not discussed in *Miller* in terms of contemporary community standards." *Smith v. United States*, 431 U.S. 291, 301 (1977). The standard for assessing the third part of the *Miller* test is an objective one. The individual cannot be expected to anticipate whether a particular community will consider an allegedly obscene item to have serious merit under the categories enumerated in *Miller*. Although there was no explicit statement in *Miller* that the third part of the test was to be an objective one, neither was there any indication that the court intended to superimpose contemporary community standards onto this part of the test.[8] "Nowhere does the opinion [in *Miller*] suggest that the . . . value of sexually oriented expression is to be judged on such a parochial basis." *United States v. Heyman*, 562 F.2d 316, 318, (4th Cir. 1977).

We must next address the effect of this erroneous interpretation on the constitutional efficacy[9] of sec.

[7] The exact language of the opinion is:

"We . . . construe the word 'obscene' in sec. 944.21(1)(a), Stats., to mean works which depict or describe sexual conduct, and (1) which taken as a whole appeal to the prurient interest in sex, (2) which taken as a whole portray sexual conduct in a patently offensive way and (3) which taken as a whole do not have serious literary, artistic, political or scientific value. Whether a work appeals to the prurient interest and whether it depicts or describes sexual conduct in a patently offensive way and whether it has serious literary, artistic, political or scientific value are to be determined by its effect upon the average person applying contemporary community standards." *State ex rel. Chobot v. Circuit Court*, 61 Wis.2d at 369–370.

[8] The error found in *Chobot* was compounded by the repetition of the same language called into question here in *Madison v. Nickel*, 66 Wis.2d 71, 223 N.W.2d 865 (1974) and *State v. Reichert*, 67 Wis.2d 69, 226 N.W.2d 196 (1975).

[9] Both the Wisconsin and the United States Constitutions protect freedom of speech. The Wisconsin Constitution, sec. 3, Art. I provides:

944.21(1) (a), Stats. Even in those areas where the state may permissibly regulate without violating the First Amendment, the regulating power "must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut,* 310 U.S. 296, 304 (1940). If the obscenity statute as construed in *State ex rel. Chobot v. Circuit Court,* unduly infringes protected freedoms, then it cannot withstand constitutional scrutiny. A statute which is overbroad in scope is one that is designed to burden or punish activities which are not constitutionally protected, but the statute sweeps too broadly and includes within its compass activities protected by the First Amendment.[10]

"§3. **Freedom Of Speech And Press; Responsibility For Abuse; Criminal Libel.** SECTION 3. Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions or indictments for libel, the truth may be given in evidence, and if it shall appear to the jury that the matter charged as libelous be true, and was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact."

The First Amendment to the United States Constitution provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The Fourteenth Amendment provides:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[10] The United States Supreme Court continues to adhere to the view that obscenity is not speech, and thus is not within the pro-

Even if the individual defendant could have been convicted under a narrowly drawn statute, the defendant can raise the question of overbreadth in the First Amendment area. *Lewis v. City Of New Orleans,* 415 U.S. 130, 133 (1974), *but, compare, Broadrick v. Oklahoma,* 413 U.S. 601, 611–616 (1973). In a recent case, it was held that the Illinois criminal obscenity statute as construed by that state's highest court was neither overbroad nor vague. *Ward v. Illinois,* 431 U.S. 767 (1977). The United States Supreme Court in that case quoted with approval language from the Illinois Supreme Court's opinion which stated that overbreadth in a statute must not only be real but substantial as well, when judged relative to the statute's plainly legitimate sweep. *Ward v. Illinois,* 431 U.S. at 776. But in *Vance v. Universal Amusement Co.,* — U.S. —, 100 S. Ct. 1156, 1161, 63 L. Ed.2d 413, 420 (n. 12) (1980), in ruling that a Texas obscenity statute authorized a prior restraint on motion pictures without proper safeguards, the court quoted from its earlier decision in *Freedman v. Maryland,* 380 U.S. 51, 56 (1965), which states in part, "In the area of freedom of expression . . . one has standing to challenge a statute . . . whether or not his conduct could be proscribed by a properly drawn statute. . . ."

A vague statute, by comparison, is one which operates to hinder free speech through the use of language which is so vague as to allow the inclusion of protected speech in the prohibition or to leave the individual with no clear guidance as to the nature of the acts which are subject to punishment. Nowak, Rotunda, Young, *Constitutional Law,* 726 (1978). The problems of vagueness and overbreadth in statutes, although raising separate problems,

tection of the First Amendment. *See, Miller v. California,* 413 U.S. at 23. This characterization has been criticized. L. Tribe, *American Constitutional Law,* 661–662 (1978).

often arise together. *See, e.g., Dombrowski v. Pfister,* 380 U.S. 479, 486 (1965) ; *Keyishian v. Board Of Regents,* 385 U.S. 589, 609 (1967). The void for vagueness doctrine ". . . incorporates the notions of fair notice or warning. . . . [i]t requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' " *Smith v. Goguen,* 415 U.S. 566, 572–573 (1974).

During the 1960's extending into the early 1970's, obscenity prosecutions were the source of a myriad of troubling issues touching First Amendment freedoms leading Justice Harlan to comment that "[t]he subject of obscenity has produced a variety of views among the members of the Court unmatched in any other course of constitutional adjudication." *Interstate Circuit, Inc. v. City Of Dallas,* 390 U.S. 676, 704–705 (1968). (Harlan, J., dissenting).

But with the advent of *Miller v. California,* in 1973 the supreme court announced new standards along with a requirement of greater specificity in state obscenity statutes as written or construed, before they could withstand challenges on vagueness and overbreadth. The incorporation of contemporary community standards into the third part of the *Miller* obscenity formulation by this court in *State ex rel. Chobot v. Circuit Court, supra,* has resulted in a construction of sec. 944.21(1)(a), Stats., in a manner which violates the overbreadth doctrine.

By assessing the serious literary, artistic, political, or scientific value of an allegedly obscene work by contemporary community standards, the obscenity statute may include within its compass, works which when viewed objectively have serious literary, artistic, political, or scientific value and are therefore not obscene under *Miller.* The statute as interpreted by this court sweeps too

broadly, and absent another saving construction, is unconstitutional.[11]

Because we find the *State ex rel. Chobot* formulation to be overbroad we need not address the issue of vagueness in detail. The defendant does not seriously challenge the statute on vagueness grounds. It is not argued that the defendant was not on notice of what was prohibited under the statute as construed by this court. Because we do not have the films which were the subject of this prosecution before us, and have only the summaries afforded by the criminal complaint and the hearing transcripts to determine probable cause for the seizure of the films we make no determination whether the statute was unconstitutionally vague as applied to this defendant. *See, Ward v. Illinois, supra.*

The contours of permissible state regulation after *Miller* have become clear and well established through time. The job of drafting of penal legislation is primarily one for the legislature. This court is once again being asked to judicially amend the obscenity statute to bring it into compliance with the presently perceived standards emanating from the United States Supreme Court. *See, United States v. 12 200-Ft. Reels Of Film,* 413 U.S. 123 (1973); *Ward v. Illinois,* 431 U.S. 767 (1977); *Miller v. California, supra.* We conclude, at this time, that this is a determination for the legislature.

Almost from the time of its inception as a state, Wisconsin has had a criminal obscenity statute. Chapter 139, section 11 of the Revised Statutes of 1849 provided that any printed matter, pictures, figures, or descriptions

---

[11] We do not believe that the requirement that there be independent appellate review of the "serious value" aspect of the *Miller* standards as announced in *Court v. State,* 63 Wis.2d 570, 217 N.W.2d 676 (1974), obviates the defect. The appellate court even when engaging in an "exercise of judgment" would still be free to apply its perception of community standards in determining whether a work has serious value.

containing obscene material "manifestly tending to the corruption of the morals of youth" was punishable by a fine or imprisonment in the county jail not to exceed six months. After a number of modifications, a major addition directed toward "obscene or indecent" graffiti and the public display of pictures "representing the human form in a nude or semi-nude condition" became law in 1899. Ch. 128, Laws of 1899. Again, a number of changes took place before the present statute was enacted by Chapter 696, Laws of 1955 when the entire criminal code underwent a major redrafting effort. *See,* Platz, *The Criminal Code,* 1956 Wis. Law Rev. 350, 377. Minor changes were again made in Chapter 173, secs. 94–97, Laws of 1977 to provide a uniform sentencing structure and to repeal the criminal provisions for mere possession of "lewd, obscene or indecent" sound recordings or motion picture films.

Our general obscenity statute provides little or no guidance as to what people can and cannot do. Although it is true that *State ex rel. Chobot* specifically defined the types of sexual conduct depicted which can be regulated as those which the supreme court set as guidelines for state regulatory schemes in *Miller,* there is no indication except perhaps legislative silence in the face of this construction, that this is what the legislature intended to prohibit in drafting the obscenity statute. Indeed, in face of the legislative silence over twenty-five years, and the judicial evolution of obscenity standards, it is doubtful that the original legislative intent has ever been met.

We are in substantial agreement with the decision of the Supreme Judicial Court of Massachusetts in *Commonwealth v. Horton,* 365 Mass. 164, 171–172, 310 N.E.2d 316 (1974):

"People are entitled to know what they may or may not do under the threat of imprisonment or fine. Our

general obscenity statute does not furnish any guidance. . . . Thus, if there is to be regulation . . . in the area of the sale or showing of pornographic works to adults, it must be achieved by explicit new legislation."

The course that we take today is not without precedent in our prior holdings in the obscenity area. Despite the fact that we have attempted to construe the criminal obscenity statute in a manner consistent with the constitution, we have declined to exercise this power when the regulation of obscenity was attempted through the use of declaratory judgment actions.[12] In *State v. I, A Woman—Part II,* 53 Wis.2d 102, 119–120, 191 N.W.2d 897 (1971), this court stated:

"The statute has the laudable objective of determining obscenity without the necessity of placing a defendant in jeopardy of a criminal conviction. It attempts to prevent the dissemination of unprotected material before a crime has been committed. This court cannot, however, rewrite the statute to assure that this purpose will in all cases be attained within the constitutional limitations of due process and certainty. There is no doubt that carefully drafted legislation will accomplish this purpose, but this requires fact finding and public policy determinations that only the legislature can furnish. The present statute presents a grave question whether judicial interpretations of the statute can preserve its effectiveness from a public policy viewpoint and yet conform to the constitutions of the state and nation. We invite the legislature's consideration. . . ."

Other states have likewise refused to judicially modify their obscenity statutes, to bring vague and overbroad statutes within the constitutional guidelines announced by *Miller. See, e.g., State v. Wedelstedt,* 213 N.W.2d 652 (Ia. 1973) ; *Stroud v. State,* 261 Ind. 58, 300 N.E.2d 100 (1973) ; *Mohney v. State,* 261 Ind. 56, 300 N.E.2d 66 (1973) ; *Commonwealth v. MacDonald,* 464 Pa. 435, 347

---

[12] Sec. 269.565, Stats. 1969.

A.2d 290 (1975), *cert. denied,* 429 U.S. 816 (1976) ; *Art Theatre Guild v. State,* 510 S.W.2d 258 (Tenn. 1974) ; *compare, State v. DeSantis,* 65 N.J. 462, 323 A.2d 489 (1974), (holding that the state's obscenity statute did not comply with *Miller* but pending the enactment of a constitutional obscenity statute by the legislature, the court provided a "saving" judicial construction. The legislature did act but the new statute did not become effective until September 1, 1979. Title 2C [1978] N.J. Laws, Ch. 95 (eff. September 1, 1979) ) ; *State v. Shreveport News Agency, Inc.,* 287 So.2d 464 (La. 1973) *cert. denied; People v. Tabron,* 190 Colo. 149, 544 P.2d 372 (1976). The majority of states have a contrary policy and judicially save vague and overbroad statutes. *See,* Emerson, Haber, and Dorsen's, *Political And Civil Rights In The United States,* 565–566 (4th Ed., Vol. I, 1976), (cases collected).

As a matter of policy, we decline to further act to rectify the deficiencies in this statute. The problems of public policy and the regulation of criminal conduct are for the legislature. With the advent of *Miller v. California,* the outlines for specific legislation have crystallized. But the court in *Miller* intended merely to propose guidelines, not entire regulatory schemes for the states. The explicit recognition of this fact is found in *Miller* where it was stated : "We emphasize that it is not our function to propose regulatory schemes for the states. That must await their concrete legislative efforts." *Miller v. California,* 413 U.S. at 25. We have come to realize, therefore, that when this court decided *State ex rel. Chobot,* it established a regulatory scheme through a process of judicial construction. In this case, we merely decline to right our own previous efforts at construction and remand that determination to the appropriate branch of government.

We emphasize that we are not simply "giving up" on the establishment of a constitutionally permissible scheme for regulating obscenity. We are recognizing that our job is one of interpreting statutes, not redrafting them. During the period of rapid change in the constitutional regulation of obscenity, statutes which were correct one year, were facially obsolete from a constitutional standpoint in the next. Our obscenity statute has been, by its very generality, subject to far-ranging interpretation. The *Miller* standards have been in effect for over seven years and the Supreme Court in *Miller* set the guidelines for state and federal regulation of obscenity. This statute has been subjected to this court's perception that the legislature and the people want an obscenity statute with these standards imposed. We feel that it is no longer our function to make this judgment. We likewise do not consider the legislative silence in this area to evince approval of this court's prior construction, and in any case, this silence does not reflect on the legislative approval or lack thereof of a policy toward continuing to save the statute from otherwise fatal constitutional error.

We hold that because the obscenity statute as construed is constitutionally infirm under the United States Constitution, the judgment of conviction based on the obscenity statute cannot stand.

*By the Court.*—The decision of the court of appeals affirming the judgment of conviction on the seventeen counts is reversed, and that part of the decision vacating the judgment on the remaining three counts and remanding to the circuit court is vacated and the complaints are dismissed.