DOUGLAS LA FOLLETTE, Secretary of State
You have asked whether section 13.72, Stats., is constitutional. That statute provides:
 Compensation for published articles on matters pending before legislature to be reported; penalty. (I) Whenever any thing of value is paid or a promise or agreement to pay any thing of value is given to the owner or publisher or any editor, reporter, agent or employe of any newspaper or other periodical for the publication therein of any article, editorial or other matter favoring or opposing, or which is intended or tends to favor or oppose, any bill, resolution or other matter pending in the legislature, excepting a paid advertisement showing the name and address of the person authorizing the publication and the amount paid or agreed to be paid therefor, the owner or publisher of such newspaper or periodical shall, within 10 days after such publication, file with the secretary of state a statement showing the amount of money or other thing of value paid or agreed to be paid and the name and address of the person from whom such payment or agreement was received.
 (2) Violation of this section is a misdemeanor and punishable by a fine of not less than $500 nor more than $5,000 for each offense.
I must conclude the statute violates fundamental first amendment rights and is unconstitutional on its face.
When a statute is challenged as unconstitutional, the courts, and this office, must indulge every presumption in favor of constitutionality and will sustain a statute if it is at all possible to do so. Quinn v. Town of Dodgeville, 122 Wis.2d 570,364 N.W.2d 149 (1985). When a statute infringes on fundamental first amendment rights, however, the burden of establishing the constitutionality of the statute is on the statute's proponent.Organization for a Better Austin v. Keefe, 402 U.S. 415 (1971). The state must have a compelling interest in the regulation of a subject within its constitutional power to regulate in order to justify limiting first amendment freedoms. *Page 91 N.A.A.C.P. v. Button, 371 U.S. 415, 438 (1963). Even when the state may regulate an area, it must do so in a manner that does not unduly infringe the protected freedom. Cantwell v. State ofConnecticut, 310 U.S. 296, 304 (1940). Therefore, even if the state may regulate in the area, the statute "must be narrowly tailored to further the State's legitimate interest." Grayned v.City of Rockford, 408 U.S. 104, 116-17 (1972).
If a statute purports to regulate in areas protected by the first amendment, the statute is unconstitutional on its face or unconstitutionally overbroad. Grayned, 408 U.S. at 114-15. An overbroad statute is one "that is designed to burden or punish activities which are not constitutionally protected, but the statute sweeps too broadly and includes within its compass activities protected by the First Amendment." State v. PrincessCinema of Milwaukee, 96 Wis.2d 646, 655, 292 N.W.2d 807 (1980). Section 13.72 is overbroad and unconstitutional on its face.
Certainly lobbying activities may be regulated consistent with the first amendment. The Supreme Court upheld federal lobbying regulations in both United States v. Rumely, 345 U.S. 41 (1953), and United States v. Harriss, 347 U.S. 612 (1954). The lobbying regulations were upheld, however, only because the Court construed the phrase "lobbying activities" to mean lobbying in its commonly accepted sense, that is, "representations made directly to the Congress, its members, or its committees."Rumely, 345 U.S. at 47. In Harriss, 347 U.S. at 623, the Court found it necessary to construe the legislation narrowly "to avoid constitutional doubts." One of the necessary limiting constructions was that the lobbying must have been through direct communication with members of Congress. To the extent section 13.72 attempts to regulate a lobbyist's right "to saturate the thinking of the community," Rumely, 345 U.S. at 47, it impinges directly on the lobbyist's constitutionally protected right to "purvey his wares without penalty or restraint when his approach is to others than members of Congress." Zwickler v. Koota,290 F. Supp. 244, 256 (1968), rev'd on other grounds, 394 U.S. 103
(1969).
That is not the law's only fault. Although located in that section of the statutes regulating lobbying, the prohibitions of section 13.72 apply to every citizen: A citizen wishing to purchase newspaper space to comment on drunk driving legislation, handgun control or any other issue before the Legislature would have to agree to have *Page 92 
his or her name, address and the amount paid published in the advertisement or the newspaper would have to report that citizen to the secretary of state.
In Talley v. California, 362 U.S. 60 (1960), the Supreme Court considered the constitutionality of a municipal ordinance prohibiting the distribution of handbills which did not include the names and addresses of the persons who prepared, distributed or sponsored the handbills. Violation of the ordinance was a criminal offense. The Court noted that the ordinance was not limited to handbills whose content was obscene or offensive to public morals or which advocated unlawful conduct and was not limited to providing a way to identify those responsible for fraud, false advertising or libel. The ordinance was constitutionally infirm because it barred all handbills under all circumstances that did not have the names and addresses printed on them in the place the ordinance required. Talley,362 U.S. at 64. Section 13.72 suffers the same defect. The ordinance inTalley prohibited anonymous handbills; section 13.72 prohibits anonymous paid advertising. Neither is acceptable under the first amendment. Accord People v. White, 116 Ill. 2d 171,506 N.E.2d 1284 (1987).
In American Civil Liberties Union, Inc. v. Jennings,366 F. Supp. 1041 (D.C. Cir. 1973), the court considered the constitutionality of that part of the Federal Election Campaign Act of 1971 which prohibited newspapers from charging a candidate for advertising unless the candidate first certified to the publisher that the payment for the advertising would not violate campaign spending limits. The media was required to take "reasonable precautions under the particular circumstances to verify the identity and affiliation of such person and the accuracy of the written statement." Because the publication of the advertisements without the representations made the media vulnerable to criminal prosecution, the court found that the statute was "tantamount to government prescription of what may or may not appear in public print." The alternative, compliance with the certification requirements, was "nothing less than the enforcement of a system of prior restraints upon publication."American Civil Liberties Union, 366 F. Supp. at 1050-51.
I realize that application of the overbreadth doctrine is "strong medicine and should be employed only sparingly and only as a last resort." Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. *Page 93 Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). The Wisconsin Supreme Court has limited the definition of lobbying, State v.Hoebel, 256 Wis. 549, 553, 41 N.W.2d 865 (1950), but that limiting definition is to no assistance in construing section 13.72. No limiting construction can change the fact that section 13.72 does not regulate lobbying; it regulates "pure speech."Lovell v. City of Griffin, 303 U.S. 444 (1938). No limiting construction can save section 13.72 from these multiple constitutional defects.
DJH:AL *Page 94